LOUE M. BROWN v. JOHN W. McKOWN, JOEL O. MEANS and MARTHA ANN MEANS, Appellants.

**Division One, June 1, 1915.***

1. **FRAUDULENT CONVEYANCE: Equity Suit to Set Aside.** Suits in equity to set aside alleged fraudulent conveyances can only be maintained by judgment creditors who have exhausted their legal remedies, and after the return of execution, against the insolvent debtor, not satisfied for want of property upon which to levy it.

2. ————: ————: **Not Saved by Attachment Against Nonresident Without Bond.** A suit in equity to set aside an alleged fraudulent conveyance, brought by a claimant who has not reduced his demand to a judgment against a nonresident, cannot be further maintained under section 2344, Revised Statutes 1909, after the nonresident defendant has entered his appearance to a writ of attachment, previously sued out without bond, in aid of said equity suit, said attachment being thereby dissolved as of course. The amendment of 1907 to section 2298, Revised Statutes 1909, authorizes suits by attachment against nonresidents without bond, but it was not designed to broaden the scope of section 2344, or to otherwise alter the existing law, except to permit certain poor persons, having valid claims and who could not give bond, to compel such nonresident debtors to come into court; and the amendment provided that such purpose having been accomplished, the attachment, upon the entrance of his appearance by the nonresident defendant, was to be dissolved of course.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble*, Judge.

REVERSED.

*J. L. Farris, Jr., & Sons* for appellants.

(1) The attachment suit was in aid and ancillary to the main suit, and when this was dissolved there

---

*NOTE.—Opinion filed March 2, 1915; opinion modified and motion for rehearing overruled June 1, 1915.

was nothing further to support the present suit which was in aid of the attachment suit. (2) The court erred in not sustaining appellants' motion to abate and dismiss this proceeding. (3) Plaintiff could not maintain this suit in equity until he first exhausted his remedies at law. Implement Co. v. Jones, 143 Mo. 278. This is not a suit under Sec. 2344, R. S. 1909, formerly Sec. 571, R. S. 1889, for this suit was brought on December 1, 1909, and was in aid of the attachment suit instituted on October 18, 1909, which attachment suit, in turn, was instituted after the filing of the petition by respondent against Joel O. Means, one of the defendants, on September 15, 1909. The attachment suit was based on Sec. 2306, R. S. 1909, was without bond, and was dissolved upon the term following, viz., February term, 1910, upon the entrance of defendant's personal appearance, as provided by Sec. 2298, R. S. 1909. Consequently, the petition upon which plaintiff now relies for recovery, after the abatement of the attachment suit, was not authorized by Sec. 2344, R. S. 1909, under which respondent claimed the right to institute and maintain the suit here at bar. (4) The judgment for alimony obtained in Kansas by respondent against Joel O. Means, is not such a judgment as contemplated by our laws. A foreign judgment is in no sense of the word, a judgment within the meaning of our law. It refers to domestic judgments. A foreign judgment is merely a cause of action forming the basis of the suit, and does not rise to the dignity of a judgment of the courts of this State.

*George W. Littick* and *Lavelock & Kirkpatrick* for respondent.

(1) The attachment suit of respondent against Joel O. Means was legally commenced and pending when this equitable action was instituted by her to set

aside the alleged fraudulent conveyance of the attached property by Joel O. Means to John W. McKown, and, while her attachment suit was pending against Joel O. Means, she commenced this equitable action to set aside said alleged fraudulent conveyance in aid of her attachment. The statute by express provisions authorized this proceeding, and neither the abatement of the attachment nor the exhaustion thereof would prevent the further prosecution of such equitable remedy. Secs. 2294, 2306, 2344, R. S. 1909; Implement Co. v. Jones, 143 Mo. 278; Davidson v. Dockery, 179 Mo. 694. (2) It is true, according to the general rule, suits in equity to set aside alleged fraudulent conveyances, can only be maintained by judgment creditors who have exhausted their legal remedies, and after the return *non est* of execution and against insolvent debtors, but such suits by attaching creditors constitute an exception to this general rule, expressly made so by legislative provision. Sec. 2344, R. S. 1909; Implement Co. v. Jones, 143 Mo. 278; Davidson v. Dockery, 179 Mo. 694.

WOODSON, J.—This suit was instituted in the circuit court of Ray county, by the plaintiff against the defendants, to set aside and have certain deeds conveying certain lands described therein, declared null and void, because, as charged, they were executed in fraud of creditors, especially this plaintiff.

The trial resulted in a decree in favor of the plaintiff, and after moving unsuccessfully for a new trial the defendants timely and properly appealed the cause to this court.

The facts, while somewhat complicated, yet most of them undisputed, are as follows:

Mrs. Loue M. Brown, the plaintiff, the present wife of Clinton Brown, formerly the wife of Joel O. Means, of Wyandotte county, Kansas, on September 15, 1909, instituted a suit in the circuit court of Ray county, Missouri, against said Means, to recover about $1,300

and costs due her, on a judgment for that sum, rendered November 21, 1906, by the district court of said Wyandotte county, for alimony in a case brought by her against him for divorce and alimony.

Summons was duly issued for said Means by the clerk of the circuit court of Ray county, and delivered to the sheriff of said county for service. Upon the return day of the summons the sheriff made a return not served, because Means was not found in his county, etc.

Thereafter, upon October 18, 1909, the plaintiff therein, under section 2298, Revised Statutes 1909, without bond, sued out a writ of attachment in said cause, and had it levied upon fifty acres of real estate situated in said Ray county, to be hereinafter more particularly described.

On the same day an affidavit of nonresidence of said Means was filed in the cause by the plaintiff and thereupon an order of publication was based, notifying him of the institution and pendency of said suit, etc., and requiring him to appear at the next February term, 1910, of said court, and to answer, etc.

Upon the levy of said writ of attachment upon the real estate in controversy and the publication of said notice, the defendant, Joel O. Means, entered his personal appearance in the original suit, in aid of which said writ of attachment had been sued out, and filed answer to the merits thereof, and in obedience to the mandate of said section 2298, said attachment was, at the said February term, 1910, of said court, dissolved. That part of said statute, in so far as is here material, reads as follows:

"Provided that when any writ of attachment has issued against a nonresident and the plaintiff has given *no bond,* the attachment shall be dissolved as of course upon the defendant entering his appearance and filing answer to the merits of the case."

On the 16th day of May, 1910, a trial was had of said cause, which resulted in a judgment in favor of the plaintiff and against the defendant for the sum of $1594.02, as her debt, damages and costs. This judgment was never appealed from and is still in full force and effect.

On December 1, 1909, the plaintiff in said cause filed this, a second suit, in said circuit court of Ray county, under authority of section 2344, Revised Statutes 1909, which is called the suit in equity, seeking to have the deeds before mentioned set aside for fraud, etc. Thereafter, by leave of court, the plaintiff filed therein the following amended petition:

"Plaintiff in this her first amended petition, filed by leave of court, for cause of action and grounds for equitable relief against the defendants, complains and states:

"That on September 17, 1906, the plaintiff, whose name then was Loue M. Means, commenced a suit in the district court of Wyandotte county, Kansas, against the defendant, Joel O. Means, by the name of J. O. Means, and who was and is the same person as Joel O. Means, for the purpose of obtaining a judgment and decree of said district court divorcing the plaintiff from the bonds of matrimony theretofore contracted with the defendant, Joel O. Means, to obtain the care, custody and control of the minor children of said plaintiff and defendant, and for alimony and costs of suit.

"That the district court of Wyandotte county, Kansas, then was and now is a court of general jurisdiction, and by reason of the institution of the suit aforesaid the district court of said Wyandotte county had and obtained jurisdiction of the defendant and the subject-matter of said action; that jurisdiction of the person of the defendant, Joel O. Means, was had and obtained in said action by process regularly issued from said district court and the same being duly and personally served on said Joel O. Means according to

the statutes in such cases made and provided, thereby notifying and summoning said defendant, Joel O. Means, to be and appear in said court on a certain day therein named, to-wit, October 7, 1907, and to answer the petition of the plaintiff in said cause; that the defendant, Joel O. Means, although legally and personally served with process in said cause according to and as provided by the statutes of the State of Kansas, failed, neglected and refused to appear before said court in said cause and in obedience to the writ of summons issued and so directed to and served upon him as aforesaid, but that he made default therein and left said action wholly undefended; that such proceedings were thereafter had in said cause, that on November 21, 1906, a judgment and decree for divorce as prayed for in the petition of the plaintiff was granted and rendered by said district court in favor of the plaintiff and against the defendant, Joel O. Means, divorcing the plaintiff from the bonds of matrimony theretofore contracted with the defendant, Joel O. Means, awarding to the plaintiff the care, custody and control of the minor children of the plaintiff and the defendant, and adjudging to the plaintiff and against the defendant alimony in gross in the sum of $1200, and adjudging to the plaintiff the further sum of $100 as and for her attorney's fee in said cause and for costs of said suit, taxed at the sum of $35, which was paid by the plaintiff, making a judgment in favor of the plaintiff and agent the defendant, Joel O. Means, including the attorney's fee and cost so paid by plaintiff, amounting in the aggregate to $1325.

"That thereafter, to-wit, on January 2, 1907, and November 22, 1907, the plaintiff caused two several executions to be issued on the judgment and decree aforesaid from the office of the district court of said Wyandotte county, both of which were returned unsatisfied, for the reason no property or effects of the

defendant, Joel O. Means, were found on which to levy the same.

"That thereafter, to-wit, on September 15, 1909, the plaintiff, who after the institution of the aforementioned suit intermarried with one Clinton Brown, commenced a civil action in the circuit court of Ray county, Missouri, on the judgment rendered in her favor by the district court of Wyandotte county, Kansas, against the defendant Joel O. Means, on November 21, 1906, for the said sum of $1325, to enforce the collection of the same, no part thereof having been paid, by filing in the office of the clerk of the circuit court of said Ray county her petition and causing process to be issued thereon returnable to the October term, 1909, of the circuit court of said Ray county; that thereafter, to-wit, on October 18, 1909, in aid of said civil suit commenced by the plaintiff against the defendant, Joel O. Means, in the circuit court of said Ray county, on September 15, 1909, the plaintiff filed in said court her affidavit for attachment against the property of the defendant, Joel O. Means, and thereupon a writ of attachment was ordered and issued from said circuit court in said cause directed and delivered to the sheriff of said Ray county, commanding him to attach in said cause the lands, tenements, goods, chattels and evidences of debt of the defendant, Joel O. Means, found in said Ray county, or so much thereof, as would be sufficient to satisfy the claims and demands of the plaintiff against the defendant, Joel O. Means, together with interest thereon and costs of suit; and, thereafter, on the same day, the sheriff of said Ray county seized, levied upon and attached as the property of said defendant, Joel O. Means, the following described real estate, lying and being in said Ray county, to-wit, fifty acres off of the north end of the east half of the northeast quarter of section eleven, in township fifty three of range twenty nine, which was and is the property and estate of the defendant, Joel O. Means; and on the same day the said

sheriff filed in the office of the recorder of deeds within and for said Ray county an abstract of said attachment, showing the names of the parties to said suit, the amount of the debt sued for, the date of the levy and the description of the land attached as required by the statutes in such cases made and provided.

"That on October 16, 1909, after the institution of said suit by the plaintiff against the defendant, Joel O. Means, in the circuit court of said Ray county, on September 15, 1909, on said judgment rendered in the district court of Wyandotte county, Kansas, on November 21, 1906, in favor of the plaintiff and against the defendant; and, after the issuance of process by the clerk of the circuit court of said Ray county on said suit therein filed, the defendant, Joel O. Means, with full knowledge of the pendency of said suit and the indebtedness therein evidenced, and with the full purpose and intention of hindering, delaying and defrauding his creditors, especially this plaintiff, pretended to sell and convey the above described real estate to his codefendant, John W. McKown, and did on said October 16, 1909, make, execute and deliver to his said codefendant, John W. McKown, a deed in common form containing the usual covenants of warranty, describing and purporting to convey the real estate above described for the pretended and recited consideration of $2500, but in truth and in fact said pretended conveyance was so made without any consideration whatever being actually paid therefor; that neither the sum of $2500, so recited as the consideration aforesaid in said deed, nor any other consideration whatever was actually paid therefor; that said defendant, John W. McKown, at the time, and prior to the execution of said deed to him by his codefendant, Joel O. Means, knew of the pendency of said suit in the circuit court of said Ray county on the judgment rendered in favor of the plaintiff in the district court of Wyandotte county, Kansas, against the defendant, Joel O.

Means, and to prevent and defeat the collection thereof by the plaintiff, the defendant, John W. McKown, then and there participated in, conspired and confederated with his codefendant, Joel O. Means, for the purpose and with the intention of aiding and assisting and abetting him, in hindering, delaying and defeating this plaintiff in the collection of her said judgment by the fraudulent means and methods aforesaid; that the defendant, John W. McKown, entered into and participated in the negotiation aforesaid and received said deed with the full knowledge of the fraudulent purpose of his codefendant, Joel O. Means, and for the purpose of aiding, abetting and assisting him by the fraudulent means and methods aforesaid in hindering, delaying and defrauding the creditors of said Joel O. Means, and especially this plaintiff.

"That the deed of October 16, 1909, whereby said Joel O. Means pretended to convey the real estate aforesaid to the defendant John W. McKown, for the recited consideration of $2500, was and is a voluntary conveyance made without any valuable consideration whatever moving or passing from the grantee therein named to said grantor, and without anything of value being actually paid therefor, and the same having been made and entered into by and between said defendants for the fraudulent purpose aforesaid, and the said John W. McKown then and there being an active participant in the fraudulent purposes and intentions of his codefendant, Joel O. Means, acquired no title or interest whatever in or to said lands as against this plaintiff; that the defendant, John W. McKown, was not and is not a purchaser of said real estate for value and in good faith, or such purchaser of any right, title or interest whatever therein; and the plaintiff avers and charges the fact to be that said transaction was and is a cheat and fraud on the rights of the plaintiff, and was done and made for the purpose and with the intention of defrauding and depriving her of her just rights in

the premises, and that the defendant, John W. Mc-
Kown, acquired no rights in said premises which he
may hold for himself or another under or by virtue
of said deed against or prejudicial to the rights of this
plaintiff.

"That on October 18, 1909, the defendant, John W.
McKown, filed or caused to be filed said deed for rec-
ord in the recorder's office of said Ray county, and
the same is now of record therein in Book 116 at page
512 of the deed records of said office, a copy of which
deed is filed with the original petition in this cause,
marked exhibit 'A' and made a part of said petition,
and is here referred to and made a part hereof.

"That the defendant Joel O. Means is a nonresi-
dent of the State of Missouri; that the issuance of
an execution on the judgment rendered by the circuit
court of said Ray county in favor of the plaintiff and
against the defendant, Joel O. Means, on May 16, 1910,
would be useless, as said defendant, Joel O. Means,
has no property or estate subject to execution and noth-
ing would or could be realized thereby or thereon;
that the plaintiff will be unable to collect or realize on
said indebtedness and judgment, or any part thereof,
unless the deed aforesaid from the defendant, Joel O.
Means, to his codefendant, John W. McKown, be set
aside and the real estate therein described and here-
tofore attached, is subject to said indebtedness and
judgment; that the rights of the plaintiff would be
prejudiced or defeated by the delay incident thereto
caused by the time necessarily consumed for the is-
suance and return of an execution on said judgment,
and the rights of the plaintiff in the premises and to
said property would be further complicated and en-
dangered by and on account of such delay; that the
plaintiff has no adequate remedy at law, and in truth
and in fact, is remediless in the premises without the
interposition of a court of equity to set aside the deed
aforesaid and subject said real estate to her claim and

judgment, because said Means has no other property, and by reason of the premises aforesaid and the alleged acts and doings of the defendants, a right of action hath accrued to her and exists in her behalf for relief to invoke the aid of a court of equity in setting aside the deed aforesaid and subjecting the property therein described to the indebtedness and judgment of the plaintiff.

"Wherefore, the plaintiff prays the court that the deed dated October 16, 1909, from Joel O. Means and wife, to John W. McKown, filed for record in the recorder's office of Ray county on October 18, 1909, and recorded in Book 116, page 512, of the deed records of said county, describing and purporting to convey fifty acres off of the north end of the east half of the northeast quarter of section eleven, in township fifty three of range twenty nine in said Ray county, be by this court adjudged and declared fraudulent and void as to this plaintiff, and that the same be set aside and for naught held, and that it be adjudged and declared that neither the said John W. McKown nor Martha Ann Means shall take or hold any right, title or interest in or to said real estate by reason of said deed or otherwise, and that they be precluded and barred from setting up any claim to said premises under or by said deed, and that the said John W. McKown be divested of any and all claim to said real estate under said deed, and that said real estate be subjected to and sold by order of court to satisfy and pay the indebtedness and judgment of the plaintiff, and for all proper relief in the premises."

The defendant McKown filed a separate answer, alleging in substance that he had no personal interest in the subject-matter of the suit, but was acting in all the matters mentioned in the pleading and evidence as trustee for his sister, Martha Ann Means, who had entered her appearance in the cause as a party defendant in the amended petition mentioned.

The separate answer of Martha Ann Means (with formal parts omitted) was as follows:

"Now comes the defendant Martha Ann Means, and for her separate answer to the amended petition of plaintiff says that on the —— day of ——, 1909, the plaintiff here instituted a suit against defendant Joel O. Means in the circuit court of Ray county, Missouri, by ordinary summons, returnable to the October term, 1909, of the said court: That afterwards, at the October term, 1909, of said court, said plaintiff sued out a writ of attachment, returnable to the February term, 1910, of said court, against said Joel O. Means, in aid of said original suit, and under the same did cause the land in controversy to be attached and levied upon by the sheriff of Ray county, Missouri, under said attachment proceedings as the property of said Joel O. Means; that thereafterwards, on the —— day of ——, 1909, said plaintiff did institute this suit against John W. McKown and Joel O. Means, to set aside the deed mentioned in the petition therein, returnable to the February term, 1910, of said court, alleging that the same had been made for the purpose of hindering, delaying and defrauding plaintiff in the collection of her alleged indebtedness sued on in said original suit; that in the petition therein plaintiff sued only as an attaching creditor by reason of the attachment hereinbefore referred to; that at the February term, 1910, of said circuit court said attachment suit so instituted by the plaintiff herein was, by the court, quashed, dissolved and abated. This defendant, Martha Ann Means, therefore says that by reason of the premises the plaintiff ceased to be an attaching creditor, and thereafter had and has no right to further prosecute this action, and said facts are hereby pleaded as a bar to the further prosecution of this suit.

"For a further and additional defense herein this defendant, Martha Ann Means, says that on the —— day of ——, 19—, she was single and unmarried; that

on said date said Joel O. Means did ask this defendant to become his wife and did promise her the sum of two thousand dollars in money; that in consideration of and in reliance upon said promise of marriage, and in reliance on said promise to pay said money as aforesaid, this defendant did on the —— day of ——, 19—, marry said Joel O. Means and from said date up to the present she has been and now is the wife of said Joel O. Means; that pursuant to said promise said Joel O. Means did pay and deliver to this defendant the sum of two thousand dollars; that thereafter without the written assent of this defendant, her husband, the said Joel O. Means, did take said money and the proceeds thereof and invest the same in the real estate in controversy, with the understanding and agreement that the title thereto should be taken in her name; that she supposed the title to said property had been taken in her name and did not learn to the contrary until the —— day of ——, 1909; that she requested the said Joel O. Means to transfer the title to said lands to her and he frequently promised to so do, but did not do so until the day of execution of the deed to John W. McKown at the time mentioned in plaintiff's petition; that said Joel O. Means and this defendant, made, executed and delivered to said John W. McKown the deed in question for the sole purpose of conveying the title of said land through said McKown to this defendant, Martha Ann Means, with the agreement and understanding that said McKown should thereafter convey said land to this defendant; that pursuant to said arrangement and understanding this defendant and her husband did make, execute and deliver to said McKown the deed mentioned in plaintiff's petition as being recorded in Book 116 at page 512 in the recorder's office of Ray county, Missouri; that said John W. McKown accepted said deed for said purpose only and pursuant thereto did thereafter, to-wit, on the —— day of ——, 19—, make, execute and

deliver to this defendant a deed conveying the same lands described in the deed aforesaid.

"This defendant says that she entered into the marriage relation with the defendant, Joel O. Means, in good faith; that at the time of the promise of the marriage, as aforesaid, and of the promise to pay said money in consideration of said marriage as aforesaid she entered into said arrangement and agreement in good faith, without knowing that said Joel O. Means was indebted to plaintiff in any sum whatever, or that he was indebted to any one in any sum whatever; that at the time of the marriage, aforesaid, she was not aware that said Joel O. Means was indebted in any sum whatever; that at the time said Joel O. Means paid her the money aforesaid in consideration of said marriage, this defendant did not know that said Joel O. Means was indebted to anyone in any sum whatever, nor did she at any of said times have reason to believe he was indebted to any one.

"This defendant denies that the deed made by said Joel O. Means to John W. McKown, as set forth in plaintiff's petition, was made for the purpose of hindering, delaying or defrauding the creditors of said Joel O. Means, or any of them, in the collection of their debts, and denies that said John W. McKown participated therein for any fraudulent purpose, but that all that said John W. McKown did in the premises was in the utmost good faith, and for the purpose hereinbefore mentioned; that the deed made from said John W. McKown to this defendant, Martha Ann Means, was not made for the purpose of hindering, delaying or defrauding any of the creditors of the said Joel O. Means in the collection of their debts, or any parts thereof.

"This defendant, therefore, says that said Joel O. Means, prior to his conveyance to said John W. McKown, as aforesaid, only held said property in trust for this defendant; that after the making of said deed

to said John W. McKown he then held said land in trust for this defendant, and that in the making of both of said deeds the said grantors therein were not conveying the same in fraud of anyone, but they were only doing what, in law, equity and good conscience they ought to do, and the same were made solely for the purpose of executing the trust resulting as aforesaid in favor of this defendant.''

The reply was a general denial.

Counsel for appellants also filed the following motion to dismiss the cause, the formal parts omitted:

''Now comes the defendant John W. McKown and represents and shows to the court that on the —— day of ——, 1909, the plaintiff herein instituted a suit against one Joel O. Means, in the circuit court of Ray county, Missouri, by ordinary summons, returnable to the October term of said court; that afterwards, at the October term, 1909, of said court, said plaintiff sued out a writ of attachment, returnable to the February term, 1910, against said Joel O. Means, in aid of said original suit, and under the same did cause the land in controversy to be attached and levied upon by the sheriff of Ray county, Missouri, under said attachment proceedings, as the property of said Joel O. Means; that thereafter, on the —— day of ——, 1909, said plaintiff did institute this suit against Joel O. Means and John W. McKown, to set aside the deed mentioned in the petition herein, returnable to the February term, 1910, of said court, alleging that the same had been made for the purpose of hindering, delaying and defrauding plaintiff in the collection of her alleged indebtedness, sued on in said original suit; that in the petition herein, plaintiff sues only as an attaching creditor by reason of the attachment hereinbefore referred to.

''The defendant John W. McKown further represents and shows to the court that at the February term, 1910, of said circuit court of Ray county, Missouri,

said attachment suit, so instituted by plaintiff herein, was quashed, dissolved and abated.

"Wherefore, this defendant, John W. McKown, says that thereupon upon the dissolution of said attachment, plaintiff ceased to be an attaching creditor, and therefore had and has no right to further prosecute this action, and defendant prays that this suit may be dismissed and abated."

This motion, after being duly considered by the court, was duly overruled, and appellants excepted.

If I correctly understand the effect of this motion to dismiss the suit, it is that suits in equity to set aside alleged fraudulent conveyances can only be maintained by judgment creditors who have exhausted their legal remedies, and after the return of execution not satisfied for want of property upon which to levy, and against insolvent debtors.

The existence of this general rule is not questioned by counsel for respondent, but they rely upon an exception thereto which they express in the following language: "Such suits by attaching creditors constitute an exception to this general rule, expressly made so by legislative provision."

Their contention is that the lien plaintiff obtained upon the land in controversy by the attachment, procured without bond, previously mentioned, issued in pursuance to said section 2298, was sufficient to bring the case within both the letter and the spirit of section 2344, Revised Statutes 1909, which provides as follows:

"Any attaching creditor may maintain an action for the purpose of setting aside any fraudulent conveyance, assignment, charge, lien or encumbrance of or upon any property attached in any action instituted by him; and where several attachments in favor of different plaintiffs are levied on the same property, all or any number of such plaintiffs may join in the same action for that purpose."

In support of this contention we are cited to the cases of Implement Co. v. Jones, 143 Mo. 253, 1. c. 278, and Davidson v. Dockery, 179 Mo. 687, 1. c. 694.

While it is true this statute authorizes an attaching creditor to institute and maintain a creditor's bill to set aside a fraudulent deed, that statute was never designed to apply to attachments issued without bond, as authorized by said section 2298, as I will now undertake to show.

While an attachment issued *without bond,* as was done in this case, under an amendment of 1907, may, under the strict letter thereof, be sufficient to authorize the institution and prosecution of a bill in equity, under section 2344, Revised Statutes 1909, to set aside a deed executed in fraud of creditors, such as this case is, yet when we consider the history of that amendment and the evil it was designed to remedy, it will be clearly seen that the Legislature did not intend thereby to authorize an equitable proceeding to set aside and cancel a deed executed in fraud of creditors, when the *only claim* the plaintiff has to support the proceeding was an attachment issued under said section 2298, *without bond.* If that is true, then anyone, claiming to have a demand against another for one cent, one dime or one dollar, or for any other sum, founded upon contract or tort, could, in the first instance, institute and maintain a bill in equity to set aside a deed executed by the supposed debtor or tortfeasor before the complainant had established his claim, in any manner, save by the bold charge of indebtedness made in the bill.

The last section mentioned has been on the statute books of this State, with slight changes, almost from the organization of the State government, and has been carried through the various revisions, down to the year 1907, the year the amendment mentioned was made, which, as amended, is now section 2298; and said section 2344, authorizing proceedings of this character, was first enacted in 1860 (Laws 1860, p. 3, sec. 2), and has

been brought forward without change through the various revisions from that time to the present, and is now section 2344, R. S. 1909.

Prior to the amendment of 1907 no proceeding of any kind, either at law or in equity, could be maintained in the courts of this State, against an individual nonresident, except by a proceeding *in rem* or in a proceeding in the nature of *rem,* or by an attachment based upon affidavit and accompanied by bond as provided for by said section 2298, prior to its amendment. (In all of which, of course, notice was required to be given to the nonresident by publication.) This completed the jurisdiction of the court, it already having jurisdiction of the subject-matter of the suit, by virtue of the levy of the attachment.

And under that state of the law, even a proceeding to set aside a deed for having been executed in fraud of creditors, had to be based upon a judgment rendered by a court of competent jurisdiction of this State, or upon an attachment lien, based upon an affidavit and secured by an attachment bond.

Perhaps it may be useless to state that prior to and subsequent to the amendment of 1907, there were many individual nonresidents doing business in this State, who could not be sued on an ordinary claim, without attaching the property or by proceeding in equity, as in cases of *rem.*

From this it is seen that as the law then stood, no ordinary creditor, nor one who had a demand against an individual nonresident, growing out of tort, could sue him *in a law* case, except by attachment, issued upon affidavit and bond.

That condition of affairs leads to great injustice, and many hardships. For instance, I recall the facts which called forth and prompted the enactment of said amendment of 1907, which are substantially as follows: Prior to that year, one of the great packing

265Mo.22

houses of St. Joseph, Missouri, the Hammond Packing Company, I believe was the name of it, was a copartnership, formed and existing between gentlemen residing in the States of Ohio, Illinois and Indiana, and was and had been for years doing a general packing business at St. Joseph, under the style and firm name of the Hammond Packing Company. This company employed many men—a thousand perhaps, or more; and in the prosecution of that great business many of these employees, from time to time, sustained personal injuries.

The owners of the plant being nonresidents, the ordinary process of law could not be served upon them, and there being no other way of procuring service, except by attachment, the courts of justice were practically closed against all persons so injured, for the reason that they were laboring men, and as a rule, were without means and ability to give attachment bonds, under the law as it then existed.

So, I repeat, that under the law and the facts, as they then existed, justice was absolutely denied to practically all of those who were injured in that plant.

This injustice became so outrageous and burning, that Judge Charles H. Mayer, then in the Senate from St. Joseph, introduced the bill amending section 370, Revised Statutes 1899, authorizing suits to be brought by attachment against nonresident defendants without bond, with the proviso that the attachment should be dismissed upon the defendant entering his appearance. That bill was duly enacted into a law, and as before stated is now section 2298.

This brief history of that amendment shows that it was the design of the Legislature to enable the poor and crippled to have their day in court, and to have their grievances heard and determined in a court of justice, which otherwise could not have been done, for the reasons stated. While this amendment was enacted for the benefit of the poor mentioned, yet it is sufficiently comprehensive to embrace all persons and

classes who may have such grievances against a non-resident.

But the history of this piece of legislation not only discloses the purpose of its enactment, but also that it was not intended to broaden the scope of said section 2344, which was not in the mind of the Legislature, as before stated, and which was first enacted in 1860, and remains upon the statute books to this day, without change. The purpose of this amendment is also made plain by the proviso attached to the end of said section 2298, which is to the effect that upon the entrance of the appearance of the nonresident, and the filing of an answer to the merits of the case, the attachment shall, as a matter of course, be dissolved.

If it was the design of the Legislature to broaden the scope of section 2344, so as to embrace this class of cases, which is in the nature of a proceeding *in rem*, as is contended for by plaintiff, then why did the Legislature require the attachment to be dissolved as a matter of course upon the nonresident defendant entering his appearance and filing answer?

In this class of cases the ordinary process of law— by publication—could at all times have been served upon a nonresident, but not so in personal or transitory actions, such as suits on accounts or for damages, etc.

No necessity exists in that class of cases for such a statute, while in the class of cases which leads to this amendment, no service at all could be had, because of the nonresidence of defendant and of the inability of the plaintiff to give the bond required by said statute.

If this is not the meaning of section 2298, then why bring an action at law in any such case, and why not in the first instance, in any and all such cases, file a bill in equity, accompanied by an affidavit for an attachment, without bond?

Clearly, according to the contention of learned counsel for the plaintiff, if sound, there would be no necessity whatever for suing out an attachment under

the original provisions of said section 2298, which have not been changed and which require and have at all times from its original enactment required the giving of a good and sufficient bond for double the amount sued for.

To make myself clear: If counsel for plaintiff are correct in their contention, then there is no necessity whatever for any person who wishes to avail himself of the provisions of said section 2344, regarding suits in equity, based upon attachments, to first bring an action at law and reduce his claim to judgment, against a nonresident, and sue out an attachment *with bond* as contemplated by said section 2298, both before and after its amendment in the year 1907, for the reason that in each and all such cases the plaintiff could in the first instance, as before stated, file his suit in equity, and at the same time file an affidavit of nonresidence, and sue out an attachment *without bond*.

Such a construction placed upon section 2298 would clearly shelve all of its own provisions except the amendment itself, which was enacted in 1907.

That clearly was not the intention of the Legislature in enacting said amendment, for had it been, the old section would have been repealed and the amendment enacted as a new section, thereby stripping it of all dead and useless matter.

There is no escape from the conclusion that the Legislature intended by the amendment to enable persons in this State to obtain jurisdiction over nonresidents doing business in this State, as before mentioned.

The proviso of the statute requiring the attachment to be dissolved upon the entrance of the appearance of the nonresident defendant, was designed to remove the statute from the constitutional inhibition of class legislation, which otherwise it would clearly have been.

By reading the cases of Implement Co. v. Jones, supra, and Davidson v. Dockery, supra, it will be seen

that they were based upon the old section 2, page 3, of the Laws of 1860 (Sec. 51, chap. 141, G. S. 1865, now Sec. 2298, R. S. 1909), which was originally enacted forty-odd years prior to the amendment thereof in the year 1907, as previously mentioned.

It is therefore perfectly apparent that these two cases have no application whatever to the case at bar.

We are, therefore, of the opinion, for the reason stated, that at the time of filing the original petition, notwithstanding an allegation in the petition to the contrary, the plaintiff had no judgment or statutory lien as contemplated by section 2344, Revised Statutes 1909; that the action of the court in overruling defendant's motion to dismiss the cause was erroneous; and for that reason the judgment is reversed and the bill is dismissed. All concur.