MESENDIECK GRAIN COMPANY, GOFFE & CARKENER, RESPONDENTS, v. JOHN A. FALZ, DEFENDANT; JAMES R. SULLIVAN, INTERPLEADER, APPELLANT.—50 S. W. (2d) 159.

Kansas City Court of Appeals. May 23, 1932.

*Meyer M. Rich* and *Rich & Rich* for respondents.

*Arthur R. Wolfe* for appellant.

BLAND, J.—This is an appeal from the action of the court in rendering judgment against the interpleader in an attachment suit.

The facts show that the Mesendieck Grain Company and Goffe & Carkener, Inc., on August 17, 1929, instituted separate suits by attachment, without bond, against John A. Folz, a non-resident. Upon the same day the Hodgson-Cauthorn Grain Company was summoned as garnishee in both cases. Both suits were filed during the May term of the court and were returnable to the September term. Upon September 7, 1929, which was the last day of the May term, defendant filed his entry of appearance and answer and motion to dissolve the attachment in each case, without notice to plaintiffs or their attorneys. These motions, likewise without any notice, were sustained on the same day by the judge of the assignment division and entries were made dissolving the attachments in each case.

On September 9, 1929, which was the first day of the September term, the sheriff released the writs of attachment in each case and

delivered written releases of the garnishee to the defendant, Folz, and to John R. Sullivan, his attorney. They immediately delivered said releases to the garnishee, demanding payment of the latter of the sum of $1606.03, for which sum the garnishee was indebted to the defendant. But the garnishee refused to pay over that sum or any part thereof. Thereupon, defendant assigned to Sullivan the fund in the hands of the garnishee belonging to the defendant and gave to the garnishee written notice of said assignment.

Thereafter, on September 9, 1929, the Mesendieck Grain Company, without any notice to the defendant or to any other person filed, in the circuit court, its motion to set aside the order dissolving the attachment in its case and, on the same day, the then judge of the assignment division, who was other than the judge who dissolved the attachment, made, without any notice to any of the other parties, an order setting aside, on the ground "of a mistake," the prior order dissolving the attachment. The Mesendieck Grain Company was given three days in which to file an attachment bond in the sum of $3000, which bond was filed by the latter on September 11, 1929. On September 13, 1929, defendant filed a "motion for rehearing and to set aside order setting aside order dissolving attachment," which was signed by Sullivan, as attorney for defendant. Nothing has been done toward having this motion disposed of.

On March 30, 1931, Sullivan, as assignee of the defendant, filed in each case, his interplea claiming all of the fund. On April 2, 1931, both cases were assigned to Division No. 4, a jury was waived and by stipulation between the parties, both causes were consolidated and they were tried, resulting in a judgment against the interpleader and in favor of plaintiffs. Interpleader has appealed.

It is insisted by the interpleader that the court erred in finding that the order dissolving the attachment was void. In this connection interpleader states:

"The record herein therefore presents to this court for determination the question whether or not in cases where plaintiff has brought suit by attachment against a non-resident without bond, the non-resident defendant can enter his appearance before the return day and file his answer to the merits of the case together with a motion to dissolve and have the attachment dissolved as of course. In other words, in such cases does the circuit court have jurisdiction and power to dissolve the attachment without fixing a time within which the plaintiff may file a bond?"

Section 1278, Revised Statutes 1929, on the subject of attachments, provides that a plaintiff who desires to file an attachment suit shall file an affidavit and bond, but in case the defendant is a nonresident of the State, no bond shall be required; that whenever any writ of

attachment has issued against a nonresident and plaintiff has given no bond, the attachment shall be dissolved, as a matter of course, upon defendant entering his appearance and filing his answer to the merits of the case; "unless the plaintiff, within a time fixed by the court, shall file his bond in double the amount sworn to in the affidavit of plaintiff, the time so given to be not more than ten days from the time the motion to dissolve the attachment is presented to the court for action thereon, and the right to file such bond shall expire with the term of court at which leave to file the bond is given, unless by agreement of record by the plaintiff and defendant. Such bond, as to its effects and obligation of the parties to the bond, shall be the same as if filed before the writ of attachment was issued." That part of section 1278, set out above within quotation marks, was, by way of amendment, in 1919, added by the Legislature.

The interpleader insists that the new matter providing for the fixing by the court of the time for filing a bond is merely directory and not mandatory; that the action of the court in this instance, in dissolving the attachment and fixing the time for the filing of bond by the plaintiff, was not invalid and that when the assignment was made the money in the hands of the garnishee had been freed of the attachment; that although Mesendieck Grain Company subsequently filed a bond, that the filing of the bond was not retroactive so as to defeat the assignment by the defendant.

In this connection interpleader calls our attention to the case of Brown v. McKown, 265 Mo. 320, where a history of the attachment statute is given. In that case, which was decided before the amendment of 1919, it was said that the purpose of the statute was to permit plaintiffs who were unable to furnish bond, to obtain service upon a nonresident by attaching the latter's property and forcing him to enter his appearance; that unless the statute had contained the provision that upon entry of appearance the attachment should be dissolved, it would likely have been unconstitutional as class legislation. In Donovan v. Gibbs, 268 Mo. 279, likewise decided before the amendment of 1919, it was held that upon the entry of appearance of the nonresident the attachment was not *ipso facto* dissolved, but that in order to accomplish this result, it was necessary that action be taken by the court, on the application of the defendant, to dissolve the attachment or the party entitled to the benefit of such application. [See also Pittman v. West, 198 Mo. App. 92.]

In this connection interpleader calls our attention to sections 1321 and 1322, Revised Statutes 1929, and says:

"These sections standing in the body of the attachment statute clearly show the intention of tacking the nonresident provision on to the end of section 1278, was intended only as a provision to force non-

residents to enter their personal appearance to such cases and that after that purpose was accomplished, the other sections of the attachment law should govern as to procedural and substantive rights of the parties.''

Whatever may have been the purpose of the Legislature in providing, prior to 1919, for suits by attachment against non-residents without bond, it is quite plain that the amendment of 1919 was for the benefit of plaintiffs in attachment suits against non-residents. It gives to the plaintiff the right to prevent his attachment being dissolved, notwithstanding the appearance of the non-resident, if he is able and willing to give the usual attachment bond. This is a substantial right and not to be denied to him by the court on the ground that the matter is purely discretionary in the court. We think it is quite plain that it was the intention of the Legislature, in amending the statute in 1919, to make it a condition precedent to defendant's right to have the attachment dissolved that the court fix the time for the filing of the bond by plaintiff and the latter's failure to file it within the time allowed; that upon the filing of the bond the cause should proceed as though it were filed at the outset. The amendment to the statute does not say how plaintiff shall keep the attachment alive, but specifies the manner in which defendant may obtain dissolution of the attachment and, in effect, states that he may have the attachment dissolved unless plaintiff files a bond, etc. In other words, the fixing of the time for the filing of the bond is a condition precedent to the dissolving of the attachment.

It is difficult to see how a statute protecting such a substantial and valuable right of the plaintiff in an attachment suit can be said to be merely directory and not mandatory. However, it is held that where a statute provides for a condition precedent to the action of the court, the court cannot act without complying with the condition. [Spencer's Appeal, 78 Conn. 301, 303, 304; Hurford v. City of Omaha, 4 Nebr. 336, 352; 36 Cyc., pp. 1157-1160.] There is nothing in the case of State ex inf. v. Bird, 295 Mo. 344, and like cases cited by the interpleader, to the contrary.

Of course, if the court, in dissolving the attachment, merely committed error, then the order was not absolutely void. It is the general rule that whenever it appears that the court possesses judicial powers and has rightfully obtained jurisdiction of a cause all of its subsequent proceedings are valid, however erroneous they may be, until they are reversed on error or set aside by some direct proceeding for that purpose. However, where there is no authority in the court to act, in other words, where its proceedings are *coram non judice*, then they are null and void. [Fithian v. Monks et al., 43 Mo. 502; 33 C. J., pp. 1076, 1077.] It is held that it is necessary that a court have

jurisdiction, not only of the parties and the subject-matter, but it must also have jurisdiction to render the particular judgment or order in the particular case. Otherwise the judgment or order is absolutely void. [Ecton v. Tomlinson, 278 Mo. 282, 288; In re McNeil, 68 Kan. 366.]

A serious question arises as to whether the act of interpleading does not admit that the property is under the jurisdiction of the court under the writ of attachment, but as we hold the order dissolving the attachment was absolutely void, it is not necessary to go into this matter.

In view of the interpleader's statement as to the matter to be decided by this court and our holding in reference thereto, the judgment should be affirmed and it is so ordered. All concur.