A. S. GILSON, APPELLANT, v. WM. J. CARROLL ET AL., RESPONDENTS. —97 S. W. (2d) 146.

Kansas City Court of Appeals. May 25, 1936.

*C. W. Prince, James N. Beery* and *Hume & Raymond* for appellant.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Wm. J. Carroll* for respondents.

BLAND, J.—This is a creditor's bill seeking to recover the sum of $1600 with interest at the rate of seven per cent per annum from August 28, 1908, and to have a lien fixed upon certain real estate for the amount so recovered. From an adverse decree plaintiff prosecutes this appeal.

The facts show that on May 12, 1908, the Mexican Gulf Land & Development Company, Ltd., was incorporated under the laws of Arizona. The corporation was formed entirely by citizens of the State of Missouri but it was chartered as a corporation under the laws of Arizona in order to avoid the corporate laws of Missouri. The organization established its main office in Kansas City, and proceeded to transact practically all of its business in this State.

On August 18, 1908, the corporation entered into a contract with Samuel W. Scott, purchasing 7500 acres of land from him situated in the Republic of Mexico, for which it agreed to pay him $150,000 in United States gold and in addition thereto, to issue to him 1000 shares of its common stock. The capital stock of the corporation consisted of a million dollars divided into 7500 shares of common and 2500 shares of preferred stock. The plaintiff, on August 28, 1908, purchased for cash a $1600 certificate of the preferred stock from the company through its president, James T. Burney.

This suit is brought upon that certificate. The proceeding is against William J. Carroll, administrator of the estate of Samuel W. Scott, deceased, and Sarah D. Scott, deceased's widow, and Helen Scott Jaccard, his daughter. The suit was brought against the administrator on the theory that Scott and his associates, who incorporated the Mexican Gulf Land & Development Company, Ltd., became partners by reason of the violation of the laws of this State in the matter of the incorporation. It was brought against the other defendants in order to have a lien declared upon certain land, known as the Kinloch Addition, located in Jackson County, Missouri, which was conveyed by said Scott to them on June 17, 1919. It is alleged in the petition that this land was conveyed to them without consideration when Scott was insolvent and in fraud of plaintiff and other creditors of Scott. De-

fendants filed a joint answer pleading the five and ten year Statutes of Limitations, and also alleging that the plaintiff was guilty of laches.

Other litigation concerning Scott and the Mexican Gulf Land & Development Company, Ltd., has reached the appellate courts of this State. [See Booth v. Scott, 276 Mo. 1; Branner v. Klaber, 330 Mo. 306; Branner v. Klaber, 49 S. W. (2d) 169; Klaber v. Booth, 49 S. W. (2d) 181.] In these cases it was established that the incorporation of the Mexican Gulf Land & Development Company, Ltd., under the laws of Arizona, was for the purpose of avoiding the laws of this State and that the corporation had no rights to a license in Missouri by reason of the provisions of Section 4598, Revised Statutes 1929, rendering its acts in this State invalid and the incorporators liable as partners.

The theory upon which plaintiff brought this suit against the administrators is that the certificate issued to him was a contract or bond which contained a promise to repay, five years from the date thereof at seven per cent interest, the amount of money paid or loaned to the Mexican Gulf Land & Development Company, Ltd., by plaintiff for which the said Scott and his fellow incorporators of that company became personally liable to repay as partners.

It is the contention of defendants that the only possible cause of action that plaintiff has against Scott, or his administrator, is that for money had and received, and as this suit is not brought on that theory, it cannot be maintained and the judgment must be affirmed. A considerable part of the briefs on behalf of the parties is devoted to this subject. This point includes the question as to whether the certificate issued to plaintiff was in fact a certificate of preferred stock or was it a contract or bond containing a promise to repay money loaned by plaintiff. In view of the conclusion that we have reached in reference to other points raised in the briefs, we find it unnecessary to pass on this question, but may assume that the viewpoint of the plaintiff in this regard is the correct one. We say this because, in any event, the judgment must be affirmed as plaintiff did not show a right to maintain this creditor's bill. We may assume, for the purposes of the case, the correctness of plaintiff's contentions that the evidence shows that the conveyance by Scott to his wife and daughter of the Kinloch Addition on June 17, 1919, was voluntary, and that, therefore, a presumption of fraud arose casting the burden upon defendants to establish that the grantor had ample means to meet his liabilities, and in view of the fact they failed to do so, the transfer must be deemed void as against creditors. [See Miller v. Allen et al., 192 S. W 967; May v. Gibler, 319 Mo. 672; First National Bank v. Hopper et al., 270 S. W. 405.] We find no evidence in the record that Scott was either solvent or insolvent at the time of the conveyance in question.

However, even assuming that the conveyance was fraudulent, it does not necessarily follow that plaintiff may maintain this creditor's

bill. The general rule is that a mere creditor cannot maintain an action to set aside a fraudulent conveyance. [Davidson v. Dockery, 179 Mo. 687.] It will be remembered that plaintiff had not procured a judgment against Scott, or his administrator, prior to the institution of this suit. However, it is claimed by plaintiff that he is entitled to maintain this bill because it was shown that Scott was insolvent and a nonresident of this State at the time of its filing. This suit was filed on June 15, 1929. The evidence shows that Scott was a resident of this State until February 5, 1923, when he and his family moved to the State of Kansas. There is no pleading or evidence that Scott's estate was insolvent on June 15, 1929. In an effort to establish the insolvency of Scott's estate on that date, plaintiff introduced evidence showing that there were nine suits pending on that date, in the Circuit Court of Jackson County, Missouri, against Scott arising out of his connection with the Mexican Gulf Land & Development Company, Ltd. The evidence contained in the record brought here does not show what the allegations of the petitions in those cases were but merely indicates the nature of the cause of action and the amount prayed for in each. Six of these suits, praying for an aggregate sum of $5300, were filed on June 21, 1923. These suits were brought upon certificates similar to the one plaintiff sues on in the case at bar, and covered certificates issued by the corporation in the years 1908 and 1909. There was another suit for $100, filed on December 31, 1925, on a similar certificate issued in 1908 and another action, date of commencement not given, entitled Branner v. Scott et al., to recover $10,000 on account of alleged fraud and deceit in the sale, on August 28, 1908, of the same certificate, the consideration for which plaintiff sued to recover back in the case of Branner v. Klaber et al., the judgment in which case was affirmed by the Supreme Court in Branner v. Klaber, 330 Mo. 306. The other pending case was filed on the same date that the present suit was instituted and was to recover the sum of $15,000 on account of the alleged fraud and deceit of Scott in the exchange of land.

There is a serious question as to whether the issues between the parties in the case of A. J. Scott Branner v. Scott et al., now pending in the Circuit Court, were not settled by the Supreme Court in Branner v. Klaber, 330 Mo. 306. However, that may be, the total amounts prayed for in the nine suits, now pending in the Circuit Court, amount to $30,400 to which, of course, must be added interest. It is admitted that these suits cover merely contingent liabilities of Scott's estate and, as before stated, there is nothing before us to indicate what merit there is in them. The fact that some of them have been pending so long casts some doubt on them in this respect. However, even if Scott's estate be liable for the entire amount prayed for in these suits, there is no evidence in the record to show that his

estate is not fully able to discharge any judgments that may be rendered against it.

There is no evidence of Scott's financial condition during his lifetime. Plaintiff attempted to show insolvency of the deceased by the testimony of his wife taken in another suit some years before this suit was brought. She testified that her husband had two bank accounts at the time of the conveyance of the Kinloch property; also another tract of land, but she did not testify as to the amount of money in the bank accounts or what the other property or land was worth. Plaintiff claims that her testimony in this respect was evasive. This may be true, but the burden was upon plaintiff to show insolvency of the estate at the time this suit was brought. The burden was not upon the defendants to show that it was solvent. [27 C. J., p. 731.]

Plaintiff says that there is a presumption of continued insolvency when that condition is once shown but the trouble with this is that insolvency was not shown as of any date. It is stated in plaintiff's brief that in the opinion of the Supreme Court in the case of Scott Branner v. Scott, *supra,* it is shown that Scott collected $226,000 from the public on account of his connection with the Mexican Gulf Land & Development Company, Ltd., and plaintiff says that this indicates a vast number of potential claims against Scott's estate which have never been litigated. There is no evidence in the case at bar of the amount that Scott collected from the public, to say nothing of the $226,000. This case, of course, must be disposed of upon the facts elicited at the trial thereof. Nor is there any showing that if Scott collected that amount his estate is not in possession of it. Plaintiff not only failed to show the insolvency of Scott's estate but also failed to show that he did not have an adequate remedy at law as against the estate at the time of the filing of this suit. The showing that Scott became a nonresident of this State in 1923 avails plaintiff nothing because it is established that Scott's estate is being administered upon in this State and plaintiff obtained personal service on the administrator. A suit in equity is not available when the plaintiff has an adequate remedy at law. [Davidson v. Dockery, *supra;* Humphreys v. Atlantic Milling Co., 98 Mo. 542.]

However, it is insisted that plaintiff is an attaching creditor (see Sec. 1324, Revised Statutes Mo. 1929) and as such comes within the exception to the general rule that only judgment creditors may maintain a creditor's suit in equity. In this connection the facts show that this suit was not tried for several years after it was instituted, or until January, 1934. The suit was first instituted against Fred W. Klaber, administrator of the estate of Samuel W. Scott, deceased, and Sarah D. Scott, and Helen Scott Jaccard. Thereafter, William J. Carroll became the administrator of Scott's estate in place of Klaber. When the suit was first instituted the sheriff attempted to obtain

personal service against the defendants, making a return that he had served Klaber but was unable to find the other defendants. Thereafter, plaintiff filed an affidavit alleging that Sarah D. Scott and Helen Scott Jaccard were nonresidents of the State of Missouri, and a writ of attachment was issued. The sheriff made return that he had attached the Kinloch property belonging to Sarah D. Scott and Helen Scott Jaccard. Publication was duly made and said two defendants entered their appearances and joined in an answer. The attachment served the purpose of getting Mrs. Scott and Mrs. Jaccard into court. [Brown v. McKown, 265 Mo. 320; Mesendieck Grain Co. v. Falz, 227 Mo. App. 24.]

Section 1324, Revised Statutes Missouri 1929, provides for the maintenance by an attaching creditor of an action to set aside fraudulent conveyances. The word "creditor," as used in this statute, has a meaning. There cannot be a creditor without a corresponding debtor. Defendants, Sarah D. Scott and Helen Scott Jaccard, were not the debtors of the plaintiff. Whether an attaching creditor can proceed in the same action as the suit in attachment to set aside a fraudulent conveyance, under section 1324, plaintiff clearly had no right to maintain this action to set aside the conveyance of the Kinloch property. The attachment was not against the debtor.

The judgment is affirmed. All concur.