STATE of Missouri, Respondent,

v.

Rose KOSOVITZ, Appellant.

STATE of Missouri, Respondent,

v.

Dorothy COHEN, Appellant.

No. 48475.

Supreme Court of Missouri,

Division No. 2.

Feb. 13, 1961.

Alfred D. Hillman, Donald L. Randolph, Kansas City, for appellants.

John M. Dalton, Atty. Gen., George C. Berry, Sp. Asst. Atty. Gen., for respondent.

EAGER, Judge.

These appeals were transferred here by the Kansas City Court of Appeals because the State is a party and the causes are civil cases. Section 3, Art. 5, Constitution of Missouri, 1945, V.A.M.S. The two causes were consolidated for trial and the appeals were consolidated in the Court of Appeals.

They are similar in all respects except as to the amounts involved. The suits were filed by the State, acting through the Attorney General, for the collection of allegedly delinquent income taxes for the years 1952–1955, inclusive. It was stipulated: that the defendants had filed returns stating the amounts of net taxable income; that they were residents of Missouri; that stated additional taxes were assessed against each of them by the Director of Revenue for each of the years in question and that they received notices thereof on or about February 8, 1957; that neither of the defendants filed any petition for abatement, correction or reassessment within thirty days of the mailing of the notice, § 143.250, RSMo 1949, V.A.M.S.,[1] nor did either appeal to the State Tax Commission, § 143.260; that the taxes assessed were duly certified to the Attorney General for collection, and that demands were duly made for the respective amounts of the taxes with interest. The amounts of the respective net taxable incomes were also stipulated. This controversy involves deductions claimed.

While the record leaves much to inference, there is little or no real controversy about the facts. The case was tried without a jury and we review the evidence here. The following facts may reasonably be deduced from the evidence, much of which was taken on the hearing of the motions for new trial under an agreement that it might be considered as having been offered at the trial: that the income of defendants was largely from royalties on producing oil wells in Louisiana, Texas and Oklahoma; that they had been allowed depletion of 27½% on federal income taxes since 1924 under existing regulations; that until 1957 the regulations issued by the Missouri Director of Revenue, pursuant to § 143.200, provided for a depletion allowance of "27½% of the gross income from the property," with certain applicable conditions and limitations; that in 1957 the

Director issued regulations which included a new sentence, as follows: "Deduction of depletion may not exceed the amount of invested Capital, Section 143.190." (Section 143.200, supra, gives authority to prescribe regulations and concludes in these words: "Such rules and regulations shall follow as nearly as practicable the rules and regulations prescribed by the United States government on income tax assessments and collections.") Beginning in 1955, the State of Louisiana required these defendants to report and pay taxes upon their incomes derived from Louisiana oil wells. Thereafter, presumably in 1956, defendants, through their accountant, filed amended returns in Missouri claiming credits for the income taxes paid in Louisiana, and claiming refunds; they also claim these refunds by counterclaims filed in the present suits. The claims for refunds seem to have acted as the precipitating cause for the presently involved reassessments. In reassessing the taxes the Director of Revenue allowed credits for the Louisiana taxes for the applicable years, but he *disallowed* the 27½% depletion allowances previously claimed for all four contested years and reassessed the taxes accordingly. This, as we gather, was done on the theory that the depletion allowed prior to 1952 had equalled or exceeded the amount of invested capital under § 143.190, although, so far as the record shows, the assessments themselves made no reference thereto and simply consisted of statements of the respective taxes adjudged to be due, after allowing credits for the amounts previously paid. Defendants' accountant testified that the Director had constantly cited § 143.190 in the negotiations about these taxes. One or more deductions for contributions were also disallowed, but these are not in controversy here. The State objected to all evidence seeking to show the circumstances of the reassessments on the ground that defendants were thus attacking the assessments collaterally, whereas they had become binding by a failure to exhaust administrative

1. All statutory references will be to this revision unless stated otherwise.

remedies. The court received the evidence subject to the objection; thereafter, it rendered judgments against the defendants for the amounts of the taxes claimed with interest, following the separate counts of the amended petitions; these totalled $3,562.00 in the Kosovitz case and $3,349.94 in the Cohen case. It also found against each defendant on her counterclaim.

■ Defendants contend here that the assessments were "illegal and void," and that consequently they may be attacked in the present proceeding although the administrative remedies were not exhausted. It is true, of course, that a void order or judgment may be attacked collaterally. This is a collateral attack; no direct proceedings were instituted as permitted by §§ 143.250 and 143.260. An appeal to the State Tax Commission may be taken under the latter section, with or without a petition for abatement under § 143.250.

Defendants insist that § 143.190, which provides that depletion allowances shall not exceed in toto the capital invested, applies only to corporations and that its application here was "illegal and void." We note, in a preliminary way and perhaps unnecessarily: that in the 1949 and 1959 revisions this section has been entitled "Deductions allowed corporate taxpayers"; originally, the *body* of the section was so worded as to apply only to "a corporation, joint-stock company or association, or insurance company * * *." RSMo 1919, § 13114. In the 1927 Laws, p. 475, this section and various others were repealed by an act "relating to the same subject-matter * * * and eliminating certain discriminations * * * between individuals and corporations." The section, as then re-enacted, made no specific reference to corporations except for certain provisions concerning insurance companies which appeared subsequent to the provisions with which we are concerned here. The present heading of the section constitutes no part of the legislation. We find it unnecessary to rule here on the meaning and applicability of the section, and have noted the foregoing largely as an indication of the possibility of confusion in its use.

■ We get back now to the ultimate question, namely,—were these assessments void? It seems reasonably clear that there was nothing on the face of the assessments which demonstrated any defect, and that the points now made rest solely upon the showing made in this collateral proceeding. While defendants assert that the assessments were both *"illegal"* and void, the former term is so broad as to mean little here. We hold that in order to subject the assessments to this collateral attack the Director of Revenue must have acted without jurisdiction or in excess of his jurisdiction, so as to render his actions *void*.

"Jurisdiction" has been variously defined. In Rivard v. Missouri Pacific Ry. Co., 257 Mo. 135, 165 S.W. 763, 770–771, the court said: "A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit." Jurisdiction has also been defined as the "authority to hear and determine," State ex rel. Missouri Gravel Co. v. Missouri Workmen's Compensation Commission, 234 Mo.App. 232, 113 S.W.2d 1034, 1038, or " * * * 'the power to hear and determine a cause. * * *'" Fraga v. State Compensation Commissioner, 125 W.Va. 107, 23 S.E.2d 641, 642. In certain of our cases discussing the term, reference has been made to the necessity for power to hear and determine the particular case. State ex rel. Missouri Gravel Co. v. Missouri Workmen's Compensation Commission, supra; Dusenberg v. Rudolph, 325 Mo. 881, 30 S.W.2d 94, 96; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778, 780. An illustration of the distinction involved in that phase of the question is presented in Dusenberg, supra, where the court said that a circuit court might have general jurisdiction of

partition cases, but nevertheless have none in a case where the petition alleged and the judgment included facts which showed that the land was not subject to partition because the plaintiff only owned a life estate.

█ We find, however, that "Jurisdiction is a matter of power, and covers wrong as well as right decisions." Lamar v. United States, 240 U.S. 60, loc. cit. 64, 36 S.Ct. 255, loc. cit. 256, 60 L.Ed. 526. See also: Harter v. Petty, 266 Mo. 296, 181 S.W. 39, 40; Rivard v. Missouri Pacific Ry. Co., 257 Mo. 135, 165 S.W. 763, 770; Central Paving & Construction Co. v. Eighth & Morgan Garage & Filling Station, Mo., 159 S.W.2d 660, 662; McIntosh v. Wiggins, 356 Mo. 926, 204 S.W.2d 770, 773; Forest Lumber Co. v. Osceola Lead & Zinc Mining Co., Mo., 222 S.W. 398, 400. In McIntosh, supra, in considering the question of jurisdiction where a court had supposedly decided erroneously the applicability of a statute, the court (referring to cited cases) said: "Nor do they hold that an erroneous decision as to such application makes the judgment a nullity. Lemons v. Reynolds [170 Mo. 227, 71 S.W. 135], supra, decided that a statute applied to a certain situation, to which we later held, in Holloway v. Burke [336 Mo. 380, 79 S.W.2d 104], supra, it had no application. Such a doctrine would dangerously unsettle land titles. On the contrary, we have held 'that when a court has jurisdiction, it has jurisdiction to commit error.' State ex rel. McGrew Coal Co. v. Ragland, 339 Mo. 452, 97 S.W.2d 113, 116. Therefore, 'no error in the exercise of such jurisdiction can make the judgment void', nor can 'errors of law in connection therewith.'" [356 Mo. 926, 204 S.W.2d 773]. In Rivard, supra, 165 S.W. loc. cit. 770, the court said: "The failure to distinguish between 'the erroneous exercise of jurisdiction' and 'the want of jurisdiction' is a fruitful source of confusion and errancy of decision. In the first case the errors of the trial court can only be corrected by appeal or writ of error. * * * It follows

that the judgment of a court of general jurisdiction, with the parties before it, and with power to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction, and as such is impregnable to an assault in a collateral proceeding." And see also Harter v. Petty, 266 Mo. 296, 181 S.W. 39.

██ It has been held that the actions of our Boards of Equalization and of the State Tax Commission are judicial acts. State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S.W. 815, 817; May Dept. Stores Co. v. State Tax Commission, Mo., 308 S.W.2d 748; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778, 780. Consequently, such an order, made within the respective tribunal's jurisdiction, has the effect of a judgment and is not subject to collateral attack. id. We see no reason why the acts of the Director of Revenue in assessing income taxes should not be similarly classified. And see, under prior laws, State ex rel. Ford Motor Co. v. Gehner, Banc, 325 Mo. 24, 27 S.W.2d 1, 3 [5].

By reference to §§ 143.230 and 143.240, we see that the Director of Revenue is empowered to make assessments on incomes, and to make additional assessments against those taxpayers whose returns are insufficient; in every such case he is required to send notice to the taxpayer by registered mail. The time within which an additional assessment may now be made is four years and, in effect, this has been held to be jurisdictional. State v. Rogers, 351 Mo. 321, 172 S.W.2d 940, 941. In that case (relied on here by defendants) the assessor, upon certification from the State Auditor, made assessments of income taxes *after* the statutory period had run. It was held that his authority, which existed solely by virtue of the statute, had expired, and that the statute constituted a specific limitation upon the authority of the Auditor to assess or reassess "beyond the three previous

years." That question is not involved here and the case is not controlling or persuasive. The same may be said of State ex rel. Ford Motor Co. v. Gehner, supra, where an attempt was made to reassess for an alleged deficiency occurring in 1926 during which there was *no* statutory authority to reassess; the first such act was enacted subsequent to 1926.

Clearly, the power of assessment and reassessment is conferred upon the Director of Revenue, subject to the four year limitation. Whatever may have been the occasion, he re-examined the returns of these defendants and assessed additional taxes, sending the requisite notices. It is certainly not shown here that the assessments bore any defects as a matter of record, which has been held to be necessary upon collateral attack. State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S.W. 815, 817. The making of these reassessments was a matter which the Director had authority to consider and determine; the subject matter was definitely included within the scope of his right to "adjudicate." If he erroneously disallowed deductions, a matter which we do not rule, his actions were merely erroneous, not jurisdictional, and they were not void.

We have considered the authorities cited by defendants. One, State v. Rogers, has already been discussed. The following,— Application of Marion Lodge No. 926, 178 Misc. 219, 33 N.Y.S.2d 575; Clinkenbeard v. United States, 21 Wall. 65, 88 U.S. 65, 22 L.Ed. 477; Garrou v. Teaneck Tryon Co., 11 N.J. 294, 94 A.2d 332, 35 A.L.R.2d 1125; Mesendieck Grain Co. v. Folz, 227 Mo.App. 24, 50 S.W.2d 159; and Himmel v. Leimkuehler, Mo.App., 329 S.W.2d 264,— all rest upon factual situations so diverse from the present one that we cannot find them persuasive. It will be impossible to

discuss those cases. Many and diverse statements will be found on the question of what does or does not constitute a lack of jurisdiction and render a judgment or order void. It is probably impossible to reconcile all the cases. We decline to follow the statement in 73 C.J.S. Public Administrative Bodies and Procedure § 146, p. 480, to the effect that where an order is based "on an erroneous conclusion of law" it is void and subject to collateral attack. Such statements only mean as much or as little as do the authorities they cite. For that statement there is cited only the case of Aylward v. State Board of Chiropractic Examiners, 31 Cal.2d 833, 192 P.2d 929, 932; that opinion contains such language, but the expressions would seem unnecessary to the decision, when made after a holding that "the board had no power to cancel the licenses without giving petitioners notice and a hearing."

We have followed here the line of authorities traditionally recognized and followed in Missouri. Under these authorities the assessments were not void. Having so concluded, it is clear that they may not be attacked in this collateral proceeding. Rivard v. Missouri Pacific Ry. Co., 257 Mo. 135, 165 S.W. 763; Harter v. Petty, 266 Mo. 296, 181 S.W. 39; Forest Lumber Co. v. Osceola Lead & Zinc Mining Co., Mo., 222 S.W. 398; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S.W. 778; State ex rel. Johnson v. Merchants' and Miners' Bank, 279 Mo. 228, 213 S.W. 815; LaPresto v. LaPresto, Mo., 285 S.W.2d 568. Defendants should have availed themselves of the administrative remedies so plainly tendered by statute.

The judgments will be affirmed, and it is so ordered.

All concur.