HOMESTAKE LEAD COMPANY OF MISSOURI, et al., Appellants,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

No. 70289.

Supreme Court of Missouri, En Banc.

Nov. 15, 1988.

Byron E. Francis, St. Louis, for appellants.

William L. Webster, Atty. Gen., Mark Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The taxpayers, Homestake Lead Company of Missouri and Homestake Smelting Company, are wholly owned subsidiaries of Homestake Mining Company. All are California corporations. Taxpayers are engaged principally in the mining and pro-

cessing of lead in Missouri. For the tax years in issue, 1976, 1977, 1978 and 1979 for "Lead," and 1977 and 1979 for "Smelting," each filed a separate Missouri corporation income tax return, making use of the single factor allocation formula authorized by § 143.451.2(2), RSMo 1986.

The director of revenue, in January and February of 1981, issued notices of deficiency for the tax years in question, in two particulars. One of these, involving the reduction of the federal income tax deduction on account of foreign tax credits, is not involved in this proceeding. The other matter of alleged deficiency had to do with the proper classification of sales as wholly within Missouri, or partly within and partly without the state, in the application of the three-factor formula. The director made adjustments based on this Court's decision in *M.V. Marine Company v. State Tax Commission*, 606 S.W.2d 644 (Mo. banc 1980), by increasing the sales classified as wholly within the state. The taxpayers protested the deficiency as provided by § 143.631, but placed in issue only that part of the assessment involving foreign tax credits.

On August 23, 1982 this Court handed down *Goldberg v. State Tax Commission*, 639 S.W.2d 796 (Mo. banc 1982), which, although not questioning the result of *M.V. Marine* on its facts, qualified certain statements in that opinion to such an extent that the taxpayers now contend that the director's reclassification of their sales was unauthorized by law, and the resulting deficiency in error.[1] The taxpayers, however, made no attempt to modify their protests previously filed or to ask for reconsideration of the deficiencies in light of *Goldberg*.

The director denied the protests on June 14, 1983. The taxpayers paid the assessed deficiencies in full on July 8, 1983. No petition for review of the director's denial of the protests was filed.

On May 4, 1984, rather, the taxpayers filed with the director of revenue claims for

---

1. *Goldberg* disapproved of the statement in *M.V. Marine* that taxability of the income in other jurisdictions was a material circumstance. 639 S.W.2d at 798. In the posture of this case it is

not necessary to express a view as to whether the taxpayers' position, based on *Goldberg*, is meritorious. That question is for the commission to decide, in the first instance.

refund of portions of the deficiencies paid alleging that the director had improperly classified certain sales as wholly within Missouri when, as a matter of fact, the sales were partly within and partly without the state. These are the claims bottomed on *Goldberg.* The director denied the protests on July 30, 1985. Complaints for review were filed with the Administrative Hearing Commission on August 25, 1985.

The director moved the commission for summary judgment asserting that the assessments became final 30 days following the final notice of deficiency as to all matters not included in the protests and that finality was confirmed when payment was made. The commissioner sustained this motion, relying on *State v. Kosovitz,* 342 S.W.2d 828 (Mo.1961). We have jurisdiction over this appeal because it involves the construction of the revenue laws of the state.

The taxpayers, in support of their claim, rely on § 143.801.1, RSMo 1986, reading as follows:

1. A claim for credit or refund of an overpayment of any tax imposed by sections 143.011 to 143.996 shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later; or if no return was filed by the taxpayer, within two years from the time the tax was paid. No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in this subsection for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

The director counters by citing *Kosovitz.* There the revenue authorities had assessed deficiencies for many past tax years. The taxpayers filed no protests within the time the statutes allowed and the attorney general brought suit on behalf of the state to collect the taxes assessed. The taxpayers sought to resist the suit on the basis that the deficiencies were illegally assessed. This Court held that the deficiencies became "final" when no protests were filed

and that the taxpayers were attempting a prohibited "collateral attack."

The present situation was not involved in *Kosovitz,* because these taxpayers are not trying to resist the collection of the taxes, but rather have paid the taxes. The question is whether the income tax refund provisions, §§ 143.781–.841, which were not in effect when *Kosovitz* was decided, allow the taxpayers to pay an assessed deficiency and then to sue for a refund of the alleged overpayment. The state argues that there could be no "overpayment," because the taxes had been finally determined when payment was made. It also points to § 143.701.1, RSMo 1986, relating to the time when the tax is "deemed to be assessed."

The taxpayers ask us to consider the federal model, in which a taxpayer has a choice of protesting the deficiency through the United States Tax Court and, if unsuccessful, then paying the taxes and interest, or of paying the tax at some point in the proceedings and then suing for a refund. They observe that, beginning in 1972, the general assembly sought to conform our income tax statutes to the federal model. *See, e.g.,* § 143.091 RSMo 1986. Although our ultimate resort must be to our own statutes we find the federal pattern helpful in determining legislative intent.

We conclude that the taxpayers were authorized to pay the assessed deficiency and then to process their claims for refund. We see no reason to construe § 143.801 so that it does not apply to payment following assessment of a deficiency, as well as to a payment accompanying an initial or amended return. The state's contrary argument is highly artificial. In *Community Federal Savings and Loan Association v. Director of Revenue,* 752 S.W.2d 794 (Mo. banc 1988), we declined to give the term "overpayment" an unduly limited construction in holding that the payment of a tax which was wholly unauthorized by law was an "overpayment."

The grounds now relied upon were not known at the time the deficiency was assessed in 1981, because of this Court's change of position between *M.V. Marine* in

1980 and *Goldberg* in 1982. The taxpayers should not be penalized for relying on the law as it appeared at the time and not including claims which lacked apparent merit in their protests. They had no reason to think that this Court would change its position abruptly. The director now suggests that the protest should have been amended to include the grounds disclosed by *Goldberg,* but the statutes make no provision for such amendment. Appeal to the commission from the denial of the protest would have been a dubious expedient because the commission is ordinarily confined to the grounds indicated in the protest. We will not now second-guess the taxpayers for not following an uncharted course, not explicitly required by the statutes. We have been reluctant to construe statutes so as to impose time limits which the taxpayers cannot practicably meet.[2]

Unlike some tax refund statutes (e.g., § 139.031, RSMo 1986), § 143.801 does not require payment under protest as a condition of filing a claim for refund. The general assembly, just as the federal congress, apparently thought that the intricacies of income taxation were such that means for correcting inadvertencies or responding to intervening decisions should be provided.

We conclude that the taxpayers had resort to a procedure available to them under the provisions of § 143.801, and that they are not barred by any failure to exhaust administrative procedures. This case differs from others in which "exhaustion" is asserted in that for there is no attempt to bypass the agencies to which the legislature has committed the initial determination of taxability. The present claim was presented to the director and to the Administrative Hearing Commission.[3] We express no opinion as to what the situation would be if the grounds now asserted had been available at the time the initial protest

of the deficiency was filed, or if the taxpayers, disregarding *M.V. Marine,* had included the present claim in their protests.

The decision is reversed and the case is remanded to the Administrative Hearing Commission for proceedings consistent with this opinion.

BILLINGS, C.J., WELLIVER, ROBERTSON, RENDLEN, and HIGGINS, JJ., and COVINGTON, Special Judge, concur.

DONNELLY, J., not sitting.

---

2. *Lake St. Louis Community Association v. State Tax Commission,* 759 S.W.2d 843 (Mo. banc 1988) (No. 70079, decided today), *Crest Communications v. Kuehle,* 754 S.W.2d 563 (Mo. banc 1988); *Community Federal Savings and Loan Association v. Director of Revenue,* 752 S.W.2d 794 (Mo. banc 1988); *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974).

3. The director and the commission seem to have been somewhat less than prompt in processing the taxpayers' various protests and claims, so that seven years have passed since the initial assessment of deficiency. These delays do not alter the legal posture, but simply show that the delay was not the fault of the taxpayers.