**Frederick & Josephine HACKMAN, Appellants/Cross–Respondents,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent/Cross–Appellant.**

**No. 71628.**

Supreme Court of Missouri, En Banc.

May 25, 1989.

Rehearing Denied June 15, 1989.

P. Terence Crebs, Christopher M. Barclay, St. Louis, and Thomas R. Schwarz, Jr., Jefferson City, for appellants/cross-respondents.

J. Harlan Stamper, Joel Pelofsky, Gregory M. Bentz, Kansas City, and Randy Bakewell, Missouri Dept. of Revenue, Jefferson City, for respondent/cross-appellant.

Juan D. Keller, William D. Crampton, John E. Toma, St. Louis, and Michael J. Kator, Washington, D.C., for amici curiae.

ROBERTSON, Judge.

On March 28, 1989, the United States Supreme Court decided *Davis v. Michigan Department of Treasury*, — U.S. —, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). *Davis* held that Michigan's income taxation scheme, which exempted from taxation all retirement benefits paid by the state or its political subdivisions but levied an income tax on retirement benefits paid retired federal employees, violated 4 U.S.C. § 111.[1]

In this case we face two issues: First, whether Missouri's exemption from income taxation of certain retirement benefits paid public employees and Missouri's concomitant failure to exempt pensions of federal retirees likewise violate principles of intergovernmental tax immunity; second, if Missouri's income taxation scheme is illegal under *Davis*, whether, and under what cir-

---

1. 4 U.S.C. § 111 provides:
   The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a constituted taxing authority having jurisdiction, *if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.* [Emphasis added.]

cumstances, federal retirees who paid the discriminatory tax may recover a refund. This case involves the construction of the revenue laws of this state. We have jurisdiction. Mo. Const. art. V, § 3.

We hold that under the teachings of *Davis* Missouri's income tax scheme violates principles of intergovernmental tax immunity. We further hold that appellants herein are entitled to a refund to the extent that such refund is permitted by Section 143.801, RSMo 1986. Reversed and remanded for such further proceedings consistent with this opinion.

## I.

Appellants Frederick and Josephine Hackman filed combined Missouri income tax returns for the years 1985 through 1988, inclusive. Included in the Hackmans' income for purposes of the Missouri income tax return were Mr. Hackman's military retirement benefits paid by the United States government. Following the announcement of the United States Supreme Court's decision in *Davis,* appellants filed claims for refund with the Director of Revenue (the Director) pursuant to Section 143.801, RSMo 1986, for tax years 1985 through 1988. As a basis for their refund claims, appellants argued that taxes paid on the federal military retirement benefits were overpayments.

On April 24, 1989, the Department of Revenue denied appellants' claims for refund. Likewise on April 24, 1989, appellants filed a timely protest of that denial, pursuant to Section 143.841, RSMo 1986. The Director denied the protest that same day.

Appellants sought review of the Director's final decision with the Administrative Hearing Commission (the Commission) pursuant to Section 621.050, RSMo 1986. The parties waived hearing and submitted the case on stipulated facts. On May 1, 1989, the Commission held that it was without jurisdiction to determine appellants' claims for refund. *City of Joplin v. Industrial Commission of Missouri,* 329 S.W.2d 687 (Mo. banc 1959); *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69 (Mo. banc 1982). The Commission therefore dismissed appellants' complaint; the effect of that dismissal was to sustain the Director's decision denying the refunds. This petition for review followed.

## II.

The Director of Revenue, amici curiae and appellants concede that Missouri's taxation scheme offends 4 U.S.C. § 111 under *Davis.* That concession is well-founded. We are aware of but three distinctions between Michigan law and Missouri law, none of which compels a contrary result.

First, § 206.30(1)(f) Mich.Comp.Laws Ann. (Supp.1988), provides in pertinent part:

(1) "Taxable income" ... means adjusted gross income as defined in the internal revenue code subject to the following adjustments;

\* \* \* \* \* \*

(i) Retirement or pension benefits received from a public retirement system of or created by an act of this state or a political subdivision of this state.

\* \* \* \* \* \*

(iv) Retirement or pension benefits from any other retirement or pension system as follows:

(A) For a single return, the sum of not more than $7,500.00.

(B) For a joint return, the sum of not more than $10,000.00.

Unlike Michigan, exemptions for state public retirement benefits from income taxation under Missouri law are not found in the taxing statutes. Instead, our legislature provides the income tax exemptions in the statutes that create the various retirement systems. *See, e.g.,* Section 70.735 RSMo 1986 (pensions for officers and employees of political subdivisions); Sections 86.190, 86.353, 86.493 and 87.365, RSMo 1986 (police and fire pensions); Section 104.250 RSMo 1986 (pensions of former employees of the State Highway Patrol and former employees of the Department of

Highways and Transportation); Section 104.540 RSMo 1986 (pensions of former elected state officials and state merit system employees); and Section 169.587 RSMo 1986 (pensions of former teachers and school employees). The effect of Missouri's scattered retirement benefit exemption statutes is identical to that of Michigan's exemption statute for purposes of a *Davis* analysis.

Second, *Davis* involved a federal civil service employee's retirement benefit; appellants receive a federal military pension. 4 U.S.C. § 111 draws no distinction between federal military personnel and civil service personnel; nor shall we draw such a distinction.

Third, Section 206.30(1)(f)(iv) expressly exempts $7,500 in retirement benefits for a single return and $10,000 for a joint return from any pension for purposes of income taxation. For the years in question, Missouri provided no such exemption for benefits received under non-state retirement plans. To the extent that Michigan permitted some exemption for federal retirees, its taxation scheme is arguably more favorable to federal retirees than is Missouri's. Nevertheless, *Davis* finds Michigan's plan violative of 4 U.S.C. § 111. We are confident that *Davis* mandates a similar condemnation of Missouri law.

We hold, as the parties concede, that Missouri's system of taxation, which exempts the receipt of public retirement benefits for purposes of Missouri income taxation, "violates principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees." *Davis*, —— U.S. at ——, 109 S.Ct. at 1508.

### III.

The United States Supreme Court did not announce whether its decision in *Davis* had retrospective or prospective application, perhaps in large measure because Michigan

conceded [2] that "to the extent appellant has paid taxes pursuant to this invalid tax scheme, he is entitled to a refund." —— U.S. at ——, 109 S.Ct. at 1508–09. In light of this uncertainty, the Director argues that we should apply the test announced in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and adopted by this Court in *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985). By application of that test, the Director contends, *Davis* need only be applied prospectively and appellants would not be entitled to a refund.

■ Before reaching the issue of retroactive/prospective application, however, a threshold inquiry is necessary. "In order to reach the retroactivity issue, this court must first decide if ... *state statutory law or state case law* mandates refunds of taxes paid prior to the Supreme Court's ... decision. If this state's tax refund statutes ... apply, then all other issues are irrelevant." *National Can Corp. v. Dept. of Revenue*, 109 Wash.2d 878, 749 P.2d 1286, 1287 (1988) (emphasis added).

The General Assembly has required that the Director:

> from funds appropriated shall refund any overpayment or erroneous payment of any tax which the state is authorized to collect. The general assembly shall appropriate and set aside funds sufficient for the use of the director of revenue to make refunds authorized by this section or by final judgment of court.

Section 136.035.1, RSMo 1986. In addition, the legislature has prescribed a specific procedure by which persons who seek an income tax refund can obtain it.

> A claim for credit or refund of an overpayment of any tax imposed by sections 143.011 to 143.996 shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later;

---

**2.** Section 206.441, Mich.Comp.Laws Annot., provides:

A taxpayer who has paid a tax which he or she claims was not due under this act may, on or before the expiration of 4 years from the date

set for the filing of the annual or final return for the year or the date the tax was paid, whichever is later, and not after, petition the commissioner in writing to refund the amount paid.

.... No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in this subsection for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

Section 143.801.1, RSMo 1986. The statute presents two requirements for securing a refund: (1) a claim based on an overpayment (2) filed within three years of the filing of the return or two years of the payment of the tax. Both requirements must be met or no credit or refund is available to the taxpayer.

As to the first requirement, this Court has previously defined the word "overpayment" for purposes of Section 143.801 in *Homestake Lead v. Director of Revenue*, 759 S.W.2d 847 (Mo. banc 1988). Relying on *Community Federal Savings & Loan Assoc. v. Director of Revenue*, 752 S.W.2d 794, 798 (Mo. banc 1988), we held that "payment of a tax which was wholly unauthorized by law was an 'overpayment.'" *Homestake Lead*, 759 S.W.2d at 848. The Court reasoned that:

> Unlike some tax refund statutes (e.g., § 139.031, RSMo 1986), § 143.801 does not require payment under protest as a condition of filing a claim for refund. The general assembly, just as the federal congress, apparently thought that the intricacies of income taxation were such *that means for* correcting inadvertencies or *responding to intervening* [court] *decisions should be provided.*

*Id.* at 849. [Emphasis added.]

*Homestake Lead* is not an aberration. This Court has consistently held that the word "overpayment" includes taxes illegally collected in other contexts. *See Kleban v. Morris*, 363 Mo. 7, 247 S.W.2d 832, 839 (1952) ("The word 'overpayment' in Section 144.190 [sales tax] includes taxes 'illegally collected'....") and *Community Federal*, 752 S.W.2d at 798, ("a reasonable construction of the terms 'overpayment' and 'erroneous' as used in section 136.035 [RSMo 1986] includes the term 'illegal'....").

We see no valid reason to alter the definition of "overpayment" adopted by this Court for purposes of tax refund statutes. The legislature is presumed to be aware of interpretations placed on these statutes by this Court in *Kleban, Hern v. Carpenter*, 312 S.W.2d 823, 828 (Mo.1958), *Community Federal* and *Homestake Lead. Martin v. Mid–America Farm Lines Inc.*, 769 S.W.2d 105, 110 (Mo. banc 1989); *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803 (Mo. banc 1975); *Messick v. Grainger*, 205 S.W.2d 739, 741–2 (Mo.1947). Despite this presumed knowledge, the General Assembly has not passed legislation requiring a contrary result.

▪ By its adoption of Section 136.-035, we have held that the State has "consented to a refund of any overpayment, erroneous or illegal payment, which would include a tax declared unconstitutional...." *Community Federal*, 752 S.W.2d at 798. For the reasons expressed in *Community Federal* and *Homestake Lead*, we hold that by its adoption of Section 143.801, the State of Missouri has consented to a refund of any overpayment, erroneous payment or illegal payment of income tax. And, as we have said, an overpayment includes those income taxes collected illegally under a taxation scheme which violates principles of intergovernmental tax immunity. *Davis*, —— U.S. at ——, 109 S.Ct. at 1508–10. If appellants meet the procedural requirements of Section 143.801, they are entitled to a refund under the mandate of the statute as interpreted by the decisions of this Court previously cited. Having so concluded, there is no need to consider whether *Davis* should be applied retroactively or only prospectively; the Director's point is, therefore, denied.

▪ The record before this Court does not show when appellants filed their 1985 tax return. Nor does the record reveal whether appellants filed their claim for refund for tax year 1985 "within three years from the time the return was filed...." Section 143.801.1. We are not favored by arguments of the parties as to whether the language of Section 143.801.1 requires filing a claim for refund within three years of the actual filing of the return, as the plain language of the statute seems to indicate,

or whether the Director has interpreted the phrase, as we understand the Internal Revenue Service interprets a similar phrase in the federal tax code, to mean that tax returns are filed for purposes of a refund on April 15, no matter if the taxpayer sends the return in earlier. These lacunae prevent this Court from determining whether appellants are entitled to a refund for their 1985 tax year. On remand the Commission will be required to address this question.

## IV.

■ The Director argues that he "may not make refunds of the magnitude which a retroactive application of the *Davis* opinion would necessitate without an appropriation by the general Assembly." The point is without merit.

This case involves a total claim for refund of $2,317;[3] only that amount is at issue in this case. We are not, of course, deaf to the public pronouncements that the precedent established by this case bears a potential $150,000,000 + cost for the State. Nevertheless, whether the State has appropriated the funds necessary is not relevant to our consideration of the merits of appellants' claims in this case. The role of the judicial branch under these circumstances is "to adjudicate whether the State is obligated.... It remains for the General Assembly to appropriate the money if it be determined that the State is so obligated." *V.S. DiCarlo Const. Co., Inc. v. State*, 485 S.W.2d 52, 57 (Mo.1972).

We have no reason to believe that the General Assembly will fail to recognize the

State's obligations and take appropriate action to meet those obligations in a manner consistent with its own directive, found in Section 136.035.1, to appropriate funds required to pay for refunds of overpayment or erroneous payment of taxes.[4]

## V.

■ Amicus curiae Griffin and Mathewson argue in the alternative that if this Court finds that *Davis* is not to be applied prospectively in this case, we must nevertheless affirm the Commission's decision. These amici urge that the appropriate remedy is to tax Missouri retirement benefits rather than grant refunds to federal retirees. Amici suggest that we remand the case to the Commission "with directions to give no effect to the pension benefit exemption statutes at issue." In support, amici cite *Linnane v. Clark*, 557 A.2d 477 (R.I.1989), a case in which the Rhode Island Supreme Court held that its state income tax, which included state and local pension benefits in taxable income, controlled over exemption provisions in its retirement laws.

We reject this argument. First, in *Linnane*, the Rhode Island Supreme Court found that Rhode Island's pension exemption statute had been repealed by implication with the passage of the state's income tax statute. The court reasoned that because the pension exemption statute was a statute of general application, had been adopted in 1956 and appeared in a different chapter of the code, the more specific in-

---

**3.** Appellants claim for refund is as follows:

| | |
|---|---|
| 1985 | $498 |
| 1986 | $669 |
| 1987 | $614 |
| 1988 | $536 |

**4.** We take judicial notice that the General Assembly appropriated and the Governor approved $228,800,000E "To the Department of Revenue: For the purpose of paying refunds for overpayment or erroneous payment of any tax or any payment which is credited to the General Revenue Fund". § 4.080, H.B. 4, (85th General Assembly, First Regular Session). We also take judicial notice that the State of Missouri, Comprehensive Annual Financial Report for the Fiscal Year ended June 30, 1988, provides in its

Notes to the Financial Statements of June 30, 1988, a description of the state's system of budgetary accounting and there explains the purpose of the "E" following the appropriation. "Certain estimated original appropriation amounts *may be increased as necessary*." (Emphasis added.) Such open-ended appropriations with estimated amounts do not constitute maximum limitations. Op. Atty. Gen. No. 56, Spainhower, (March 19, 1976). It appears, though we do not decide the point, that the General Assembly has appropriated funds for all refunds for overpayment or erroneous payments of taxes in § 4.080, including those which may be required under *Davis*.

come tax statute enacted in 1971 effected its repeal.

Our income tax statutes, Sections 143.-011, *et seq.*, were effective January 1, 1973. As we have previously noted, Missouri's pension exemption statutes are found in the statutes creating the pensions and not in the income tax statutes. Section 70.735 was passed in 1967; Section 86.190 was passed in 1939; Section 86.353 was passed in 1957 and amended in 1961; Section 86.-493 was passed in 1945 and amended in 1985; Section 87.365 was passed in 1943 and amended in 1959; Section 104.250 was passed in 1955 and amended in 1983; Section 104.540 was passed in 1957 and amended in 1981; and Section 169.587 was passed in 1976.

Repeals by implication are not favored in Missouri. "[F]or repeal of a statute by implication, the statutes must be so inimical to each other that both cannot stand and the legislature, in fact, intended repeal although it did not do so." *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 867 (Mo. banc 1983). That the legislature did not intend to repeal these pension exemption statutes by implication is seen in the General Assembly's attention to several of the exemption statutes after the effective date of the income tax statute.

Second, on May 12, 1989, the General Assembly passed and sent to the Governor H.B. 674, which taxes public employee retirement benefits in Missouri for future tax years. A decision by this Court which reaches the same result would be an act devoid of meaning.

Third, we believe the fashioning of a remedy to deal with the fiscal strain anticipated by the application of *Davis* to appellants' claim for refund is a matter reserved to the legislative branch under our constitution. Just as we refuse to adopt the arguments of amici suggesting that we determine that the exemptions heretofore honored under our law for state and local retirees be held for naught, we reject any suggestion that this Court should inject

1. All references are to RSMo 1986 unless noted.

itself into matters more ably, and properly, determined by the legislature.

## VI.

The decision of the Administrative Hearing Commission is reversed and the cause remanded for further proceedings consistent with this opinion.

BILLINGS, C.J., BLACKMAR, HIGGINS and COVINGTON, JJ., and DOWD, Special Judge, concur.

WELLIVER, J., dissents in separate opinion filed.

RENDLEN, J., not sitting.

WELLIVER, Judge, dissenting.

Being unable to understand either the political or legal urgency for rushing into this mass refund of taxes, I have no choice but to respectfully dissent.

The principal opinion correctly and appropriately states that all parties conceded that when the U.S. Supreme Court decided *Davis v. Michigan*, —— U.S. ——, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), it held that Michigan's scheme of exempting from taxation state retirement benefits while taxing federal retirement benefits violated and was in conflict with 4 U.S.C. § 111. All parties involved also concede that the *Davis* holding would be equally applicable to the Missouri taxing statute and that if *Davis* were to be applied retroactively, that a refund could be made under §§ 143.791 and 143.801.[1]

The principal opinion begins by stating that "we face two issues: first, whether Missouri's exemption ... violates principles of intergovernmental tax immunity; second, under what circumstances, federal retirees ... may recover a refund." *Hackman v. Director of Revenue*, 771 S.W.2d 77, 78 (Mo. banc 1989]. The principal opinion then holds (as all parties had conceded) that "under the teachings of *Davis* Missouri's income tax scheme violates principles of intergovernmental tax immunity," and, "that appellants herein are entitled to

a refund to the extent such refund is permitted by § 143.801." *Id.*

It is respectfully submitted that from this point on the principal opinion attempts to reason to this pre-conceived result. This I believe to be the major flaw of the principal opinion. Instead of making the "quantum leap" to the conclusion that we have a statute under which we *could* order the tax refund, which I concede to be true, we should carefully examine *Davis*, other legal precedents, federal and state, and from them reason to the wisest, fairest and most just legal solution to the problem.

### I

Before examining the law to determine whether a decision to refund or not to refund is mandated by law and precedent, I would briefly look at the majority opinion and the authorities upon which it purports to rely. The majority opinion would appear to place its principal reliance for the proposition that we should first look to the Missouri statutory and case law on *Nat'l. Can Corp. v. Dept. of Revenue,* 109 Wash.2d 878, 749 P.2d 1286 (1988).

The majority opinion states; "[b]efore reaching the issue of retroactive/prospective application, however, a threshold inquiry is necessary." *Hackman,* 771 S.W.2d at 80, and then cites *National Can;* "[i]n order to reach the retroactivity issue, this court must first decide if … state statutory law or state case law mandates refunds of taxes paid prior to the Supreme Court's … decision. If this state's tax refund statutes … apply, then all other issues are irrelevant." *National Can, supra,* 109 Wash.2d at 880, 749 P.2d at 1287.

A careful reading of *National Can* reveals to the reader that the statement taken from *National Can* has no relationship to the decision of the case and that the statement is made by the Washington Court without citation of either origin or authority. *Id.*

On the same page from which the principal opinion takes the quote, the Washington Court states:

> The decisive issues before this court are whether state law mandates refunds, and if not, whether this is an appropriate case for prospective application. We hold state law does not require refunds, and prospective application is appropriate.

> . . . .

> Washington Case law does not support the proposition that tax refunds are always mandated when a statutory scheme is found to be unconstitutional.

*Id.*

On the following page, the Washington Court states:

> The threshold factor necessary for prospective application is a finding that the *Tyler* [*Pipe Industries Inc. v. Washington Dept. of Revenue,* 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987)] decision established a new principle of law overruling past precedent on which litigants may have relied.

*Id. Nat'l Can, supra,* 109 Wash.2d at 882, 749 P.2d at 1288, *citing Chevron v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

After pursuing the *Chevron* analysis, the Washington Court concludes: "[h]aving weighed the equities in this case, we conclude that pure prospective application from the date of the United States Supreme Court *Tyler* decision is appropriate, and appellant's claims for refunds before June 23, 1987 are denied." *Nat'l Can, supra,* 109 Wash.2d at 985, 749 P.2d at 1295.

Viewed in its entirety, *National Can* would appear to be one of the leading authorities in the nation supporting the Administrative Hearing Commission's denial of refunds.

If, instead of starting with a pre-conceived result, we start with the cause of the problem, the *Davis* decision, and reason from that point, we will find no difficulty in arriving at the correct, fair and just solution to the problem.

### II

#### Davis v. Michigan

My understanding of the law suggests that this holding creates a new principle of

law and a situation where we should look to what is said in *Davis* and what is held in other federal decisions to find our answer as to what should be done to solve the problem created by *Davis*. If we conclude that under the federal law the *Davis* holding should be applied retroactively, only then should we examine our Missouri law as to how to apply the holding retroactively. If we find that the federal holding should be applied prospectively only, no further inquiry is required.

It is important to distinguish between what *Davis* did, and what it did not do. *Davis* held that 4 U.S.C. § 111 applied to federal pensioners. *Davis* held that as a result of this construction being given to 4 U.S.C. § 111, a mandate of equal treatment was called for. *Davis* said:

> We have recognized in cases involving invalid classifications in the distribution of government benefits, that the appropriate remedy "is a mandate of equal treatment, a result that can be achieved by withdrawal of the benefits from the favored class as well as by extension of benefits to the excluded class."
>
> In this case, appellant's claim could be resolved either by extending the tax exemption to retired federal employees (or all retired employees), or by eliminating the exemption for retired state and local employees.

*Davis, supra,* 109 S.Ct. at 1509 (emphasis in original) (citations omitted).

*Davis* held that the Michigan courts would be in the best position to determine how to comply with the mandate of equal treatment. As for Missouri, the General Assembly has fully complied with the mandate of equal treatment by enacting H.B. 674, which brings equality into the taxing of appellants and the other taxpayers of Missouri:

> [T]he total amount of all annuities, pensions, or retirement allowances above the amount of six thousand dollars annually provided by any law of this state, the United States, or any other state to any

person except as provided in subsection 4 of this section, shall be subject to tax under the provisions of chapter 143, RSMo, in the same manner, to the same extent and under the same conditions as any other taxable income received by the person receiving it.

C.S. No. 2 to S.S. H.C.S. H.B. 674, 85th Leg. (1989).

We should also remind ourselves that no federal pensioner is being required to pay the tax for tax year 1988 following the March 28, 1989, decision in *Davis*.

*Davis* did not require the retroactive application of its holding. *Davis* did not call for the refund of any of the money that Michigan had collected, and we assume already appropriated. The majority opinion suggests the reason for the Court failing to address and speak to the retroactive application was due to Michigan conceding it owed refunds. I respectfully submit that Michigan's concession that they would refund the tax if the tax were held to be "invalid" was unnecessary, ill-advised, and premature.

Let us assume that the Court had not spoken, but instead Congress on March 28, 1989, amended 4 U.S.C. § 111 to make it applicable to federal pensioners utilizing the same words used by the *Davis* court. Would anyone seriously contend that the retirees would be entitled to a refund? I submit that they would not. Two facts cause us to even consider the retroactive-prospective question. First, that it was the mere fact that it was a Court decision as opposed to a legislative enactment, and second, and more importantly I suggest, Michigan's unnecessary, ill-advised and premature concession that refunds were due.

*Davis* on its face indicates that the Supreme Court was not operating in a vacuum when it made its decision. The Court recognized that *Davis* was a problem confronting fourteen other states. *Davis, supra,* 109 S.Ct. at 1511, (Stevens, J. dissenting). The briefing for our case indicates there are at least twenty-one states.[2] It

---

2. *See,* Ala.Code §§ 36–27–28 and 40–18–19 (Supp.1988); Ariz.Rev.Stat.Ann. § 43–1022 (Supp.1988); Colo.Rev.Stat. §§ 39–22–104(4)(f) and (g) (Supp.1988); Ga.Code Ann. § 48–7–27(a)(4)(A)· (Supp.1988); Iowa Code Ann. § 97A.12 (West 1984); Kan.Stat.Ann.

was in this background and with this understanding that *Davis* suggested; "that the appropriate remedy 'is a mandate of equal treatment, a result that can be achieved by withdrawal of the benefits from the favored class as well as by extension of benefits to the excluded class.'" *Id.* 109 S.Ct. at 1509 (emphasis in original) (citations omitted).

The *Davis* court continued by saying that in the Michigan case, a case just like our own: "appellant's claim could be resolved either by extending the tax exemption to retired federal employees (or all retired employees), or by eliminating the exemption for retired state and local employees." *Id.*

There was no reason for Michigan's very foolish and expensive concession that they would refund. Having been afforded, as we have, additional time for more careful reading and study of *Davis*, our walking into the same trap is, I believe, inexcusable. The *Davis* court's guidance and our own legislative response made by the Missouri legislature alone should dispose of the matter.

### III

### *Retrospective Application of Davis*

Assuming that we conclude that it is necessary to examine the question of retroactive or prospective application of *Davis*, all parties agreed that the test for so determining is found in *Chevron v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). This Court has adopted and approved the *Chevron* test in *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985). *Chevron* states:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first

impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by holding of nonretroactivity."

*Chevron, supra,* at 106–07, 92 S.Ct. at 355 (citations omitted).

It cannot be disputed that *Davis* represents both a new principle of law and a case of first impression. The *Davis* opinion itself has spelled out in detail the equality required, and by passage of H.B. 674 we have already attained that equality. Missouri does not hinder the application of the new rule.

All that remains is consideration of the third prong of *Chevron*, that of weighing the equities between retroactive and prospective application of the new principle of law. In so doing, we must keep in mind that we are not dealing with "imposition of a tax" where the appellant is pitted against his government, but rather a refund case where the appellant taxpayer is pitted against his fellow taxpayers. The question to be weighed is: Shall we impose upon either a select group of taxpayers or upon all taxpayers in general the burden of abating and refunding three years of taxes for the group represented by appellant? The question to be weighed in a state struggling to fund generally accepted and needed state services is: Shall education, health, law enforcement, and other state services be required to step aside while the

§ 74–4923(b) (1985); Ky.Rev.Stat.Ann. § 16.690 (Michie/Bobbs–Merrill Supp.1988); La.R.S. 42:545, 47:44.1 (Supp.1989); Md.Tax–Gen.Code Ann. § 10–207(*o*) (1988); Miss.Code Ann. § 21–29–51 (1972); Mont.Code Ann. § 15–30–111(2)(c) (1987); N.M.Stat.Ann. § 10–11–135 (1978); N.Y.Tax Law § 612(c)(3) (McKinney 1987); N.C.Gen.Stat. §§ 105–

141(b)(13) and (14) (1985); Ore.Rev.Stat. §§ 316.680(1)(c) and (d) (1987); S.C.Code §§ 12–7–435(a), (d), (e) (Supp.1988); Utah Code Ann. § 49–1–608 (1989); Va.Code § 58.1–322(C)(3) (Supp.1988); W.Va.Code §§ 11–21–12(c)(5) and (6) (Supp.1988); Wis. Stat. § 71.03(2)(d) (Supp.1988).

state goes through the exercise of abating and refunding taxes to this select group? Exercising this abatement and refund process cannot and will not add anything to the implementation of the new principle of law announced in *Davis*, and, I do not believe that the General Assembly ever contemplated anything more by our refund statutes, §§ 143.791 and 143.801, than that taxes "illegally assessed" could be refunded. *Davis* made no holding that the taxes here in question were "illegally assessed or imposed." These taxes were legal in all of the twenty-one states involved until the Court's announcement of the new principle of law in *Davis*.

*Davis*, by giving the directions it gave, expressly stated that retroactive application was not necessary. On the facts before us, no compelling reason for abatement and refund is shown. All the factors of the *Chevron* test are fully met. The new principle of law announced in *Davis* requires and should be given only prospective application.

The decision of the Commission should be affirmed.