**DIRECTOR OF REVENUE, Appellant,**

v.

**WESTINGHOUSE CREDIT CORPORATION,**
**Respondent.**

**No. 71886.**

Supreme Court of Missouri,
En Banc.

April 17, 1990.

---

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

J. Kent Lowry, Hallie H. Gibbs, Jefferson City, for respondent.

RENDLEN, Judge.

The Director of Revenue seeks reversal of the Administrative Hearing Commission's decision awarding Westinghouse Credit Corporation a refund of credit institutions taxes paid.[1] As the issue involves construction of the revenue laws, the cause falls within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

Westinghouse Credit Corporation (WCC), a Pennsylvania corporation authorized to do business in Missouri, was originally established to finance purchases of products manufactured by its parent, Westinghouse Electric Corporation and, during the years prior to 1983, made loans for the purchase of consumer goods including electrical appliances, stereos, and television sets. In late 1982 or early 1983, WCC concluded its consumer loan business by selling all of its accounts not then in bankruptcy, more than sixty days overdue, in litigation, or otherwise unsalable, but maintained its business financing endeavors. During 1983, 1984 and 1985, the tax years in question, the termination of corporate affairs and liquidation of assets were the only activities performed by WCC relating to its consumer loan business, and for this purpose the corporation remained licensed in Missouri as a financing institution and sales finance company under Chapters 364 and 365, RSMo 1978. On successful completion of the winding up process, the gross income

from receivables in tax year 1983 totaled $431.28 and for the years 1984 and 1985 there was no accounts receivable income. The company filed appropriate returns for 1983, 1984 and 1985, but the Department of Revenue, following an audit in 1986, assessed deficiencies of $20,584.21, $41,076.91, and $69,550.34 for the years in question.

On appeal, the Administrative Hearing Commission (AHC) determined, and the Director of Revenue (Director) does not now dispute, that WCC was in fact not liable for the deficiencies so assessed. The only issue preserved for our determination is the Director's challenge to the procedure employed contesting the assessment. It is conceded that WCC paid in full under protest, then filed claim for a refund pursuant to § 136.035.1, which the Director denied, and from that denial the taxpayer appealed to the AHC.

The Director's contention in essence is that WCC was not free to seek relief under § 136.035 but could only challenge the assessment by direct "review" of the Director's denial of its protest as provided in § 148.190, which states:

> In the event the director of revenue determines that the correct amount of the tax is greater than that computed by the taxpayer, he shall, upon such determination, notify the taxpayer thereof by mail. The taxpayer *may seek review* of the determination of the director of revenue by the administrative hearing commission. (Emphasis supplied.)

The Director argues that because of WCC's failure to avail itself of the statutory right of "review," the assessment became final and thus shielded from the "collateral attack" of the taxpayer's claim for refund.

While it is clear "review" of the Director's "determination" was available to the taxpayer, an alternative procedure is found in § 136.035.1, which provides:

> *The director of revenue from funds appropriated shall refund any overpayment or erroneous payment of any*

---

**1.** Section 148.140, RSMo 1978, subjects credit institutions such as respondent to the payment of an annual tax for the privilege of exercising its franchise within the State of Missouri, measured by its net income for the previous calendar year, at the rate of seven percent.

*tax which the state is authorized to collect.* The general assembly shall appropriate and set aside funds sufficient for the use of the director of revenue to make refunds authorized by this section or by final judgment of court. (Emphasis added).

and § 136.035.3, which states:

No refund shall be made by the director of revenue unless a claim for refund has been filed with him within two years from the date of payment. Every claim must be in writing under oath and must state the specific grounds upon which the claim is founded.

Respondent's claim for refund was filed within two years from the date of payment. Rejecting the Director's contention, we affirm the decision of the Administrative Hearing Commission.

The meaning of § 136.035 is clearly discernible from its unamibiguous language. The section is found in Chapter 136, "Collection of State Taxes," describing in detail the duties and procedures to be followed by the Director of Revenue in the collection of taxes which the state is authorized to collect. While the process furnished by § 136.035 is not designated by the legislature as the exclusive mode for seeking relief from "overpayment" or "erroneous payment" of "any tax which the state is authorized to collect," neither is the direct review process of § 148.190 delineated an exclusive remedy. We see no reason to interpret either provision as the sole avenue available to the taxpayer here. By paying the assessed deficiencies for the years in question and thereafter claiming refund, the taxpayer understandably sought to reduce the risk of interest payments or other penalties.

Our holding today follows the direction set in *Homestake Lead Co. of Missouri v. Director of Revenue*, 759 S.W.2d 847 (Mo. banc 1988), where we rejected a similar argument of the Director in connection with a corporate income tax refund claim. There the taxpayers' initial protest of the Director's deficiency assessment was denied and the taxpayers paid the assessed deficiencies in full. No petition for review of the Director's denial of the protest was pursued; instead the taxpayers filed claims for refund of portions of the deficiencies paid. The Director denied the claims, and petitions for review brought the matter to the Administrative Hearing Commission where summary judgment was entered. The Commission concluded that the taxpayers were barred from pressing their claim for refund because the assessment was final thirty days following notice of the deficiency and that finality had been confirmed when payment was made. On appeal, this Court held the taxpayers' claim for refund was not barred by any failure to exhaust administrative remedies and they were entitled to proceed under § 143.801.1, RSMo 1986, which reads as follows:

A claim for credit or refund of an overpayment of any tax imposed by sections 143.011 to 143.996 shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later; or if no return was filed by the taxpayer, within two years from the time the tax was paid. No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in this subsection for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

Significantly, § 143.801's refund language and procedural requirements are essentially the same as § 136.035, under consideration here. Neither suggests exclusivity or that there be an "exhaustion" of other available appeal procedures as a precondition to filing a claim for refund. Indeed, it seems apparent the taxpayer could have proceeded under § 148.190 or 136.035 and the cause be taken to final judgment under either scheme. This is a logical extension of the rationale exposited in *Homestake*. The Court stated there:

We see no reason to construe § 143.801 so that it does not [permit] payment following assessment of a deficiency, as well as ... payment accompanying an initial or amended return. The state's contrary argument is highly artificial.

In *Community Federal Savings and Loan Association v. Director of Revenue*, 752 S.W.2d 794 (Mo. banc 1988), we declined to give the term "overpayment" an unduly limited construction in holding that the payment of a tax which was wholly unauthorized by law was an "overpayment."

759 S.W.2d at 848. The ground for relief asserted there was not known at the time the deficiency had been assessed in 1981 because the Court had thereafter modified its view of the law, *see Goldberg v. State Tax Commission*, 639 S.W.2d 796 (Mo. banc 1982), concerning the proper classification of sales as wholly within Missouri or partly within and partly without the state in the application of the three-factor formula relative to taxable income of corporations operating in Missouri. *See Homestake*, 759 S.W.2d at 847. In that respect the factual basis differs from the case at bar, for in the case *sub judice* Westinghouse knew from the beginning and consistently asserted the existence of facts which justified its contention that it was not subject to the credit institutions tax assessed for the years in question. However, here, as in *Homestake*, there has been no attempt to bypass the agencies to which the legislature has committed the initial determination of taxability. The present claim, as in *Homestake*, was presented to the Director and to the Administrative Hearing Commission.

Further, the Director misplaces his reliance on *State v. Kosovitz*, 342 S.W.2d 828 (Mo.1961). There the income taxpayers failed to petition for abatement, correction or reassessment as provided by statute, yet sought thereafter to challenge the legitimacy of the assessments in defense of a suit by the state to collect those taxes. We held the assessments could not be attacked in the collateral proceeding when the defendants failed to avail themselves of the "administrative remedies so plainly tendered by statute." *Id.* at 832. As noted in *Homestake, Kosovitz* may be distinguished in that the income tax refund provisions were not in effect at that time, and further that "these taxpayers are not trying to resist the collection of the taxes, but rather

have paid the taxes." 759 S.W.2d at 848. Here, as in *Homestake*, the taxpayer is availing itself of a plainly tendered statutory remedy, and cannot be faulted for failing to seek an alternate statutory remedy which the the legislature has provided, though the Director deems it preferential. As WCC was not subject to the credit institutions tax in 1983–85, it is entitled to a refund of those taxes paid. See *Community Federal Savings and Loan v. Director of Revenue*, 752 S.W.2d 794, 797–98 (Mo. banc 1988); *Hackman v. Director of Revenue*, 771 S.W.2d 77, 80–82 (Mo. banc 1989).

Affirmed.

All concur.